JANUARY TERM, 1884.          141

Atkinson and another vs. The Goodrich Transportation Co.

Atkinson and another vs. The Goodrich Transportation Company.

*February 25 — March 18, 1884.*

*(1-3) Negligence: Burning of building: Proximate cause: Probability of result: Court and jury.   (4) Municipal ordinance as to spark-catchers held unreasonable.   (5, 6) Contributory negligence of third persons no defense.*

1. Questions of negligence and of proximate cause are ordinarily for the jury.

2. In order to establish the fact that negligence of the defendant was the proximate cause of an injury complained of, it is not enough to show that such injury was the natural consequence of his acts. It must appear that, under all the circumstances, it might reasonably have been expected by a man of ordinary intelligence and prudence that such injury would result.   A failure to ward against a result which could not reasonably have been expected is not negligence.

3. Whether, in this case, the defendant was guilty of negligence in running up a harbor with a steamboat so equipped and managed as to emit large quantities of sparks from the smoke-stack, by means of which a fire was started in or near a planing-mill, and whether the destruction of plaintiff's house, 3,500 feet distant from said mill, by fire communicated therefrom, was the proximate result of such negligence, were questions for the jury; and the direction and force of the wind, the dryness of the season, the distance of the boat from the shore, the distance between the mill and the plaintiff's house, and the combustible nature of the buildings intervening, were all facts to be considered in determining whether there was a reasonable probability of the result.

4. A municipal ordinance forbidding the running of any steamboat, unless provided with a spark-catcher, screen, or other device, "substantially attached in or upon the smoke-stack, . . . so as to prevent the escape of sparks or burning cinders therefrom *as effectually as the same can be prevented by any means* known or in use for that purpose," is unreasonable. It was error, therefore, to permit such ordinance to be read to the jury, and to instruct them that it was negligence *per se* to run into the harbor a steamboat which was not provided with a spark-catcher as required thereby.

5. In an action for an injury from negligence, the fact that another person contributed, either before the defendant's interposition or concurrently therewith, in producing the damage, is no defense.

6. Thus, in this case, the fact that the fire, which was kindled by sparks from the smoke-stack of defendant's steamboat and which afterwards consumed plaintiff's house, started first in shavings and sawdust which the owner of a planing-mill had negligently permitted to accumulate between the mill and the dock, constituted no defense. Nor would the negligence of the fire department in extinguishing the fire, if shown, or the fact that there was no water in the city cisterns, be a defense.

APPEAL from the Circuit Court for *Outagamie* County.

The defendant in this case appealed from a judgment, entered upon a special verdict, in favor of the plaintiffs. The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

Action to recover the value of certain personal property, and of a dwelling-house situate in the city of Green Bay, which were destroyed by fire September 20, 1880. The *Phœnix Insurance Company* is a party plaintiff because it had insured the dwelling-house, and paid the insurance thereon, and in consideration of such payment *Atkinson* had assigned to the insurance company his claim against the defendant company for the value of the house destroyed. The plaintiffs claim the right to recover upon facts set out in the complaint, showing that the property was burned by the carelessness of the persons in charge of one of the steamboats of the defendant company, while navigating the Fox river in the said city of Green Bay. The allegations of negligence, upon which the plaintiffs rely, are set out in the complaint as follows:

"That on or about the 20th day of September, A. D. 1880, the said defendant, being the owner of and engaged in running the said line of steamboats at Green Bay, in the county of Brown, in this state, so unskilfully and negligently built, equipped, ran, and operated one of its said boats, the

Oconto, by failing and neglecting to have any spark-arrester, or contrivance for preventing the escape of sparks and fire from the smoke-stack of said boat, upon, attached to, or connected with the said boat in any manner, and by negligently starting said steamboat from its wharf, within the city of Green Bay, in the Fox river, where she lay, the Green Bay shore of said river being then and there covered by many old and dry wooden buildings of highly combustible character, a heavy wind then and there blowing across the course of said vessel from the southwest onto the said Green Bay shore, and negligently propelling said vessel up the Fox river, within about forty rods of said Green Bay shore, quartering against said wind, under a heavy head of steam, the smoke-stack of said vessel in the mean time throwing out large quantities of sparks and fire, said sparks, as could be plainly seen, being carried by the wind onto shore, among and onto said combustible wooden buildings, and manifestly endangering the same; that by said sparks so negligently thrown and scattered on shore a fire was set among certain buildings near the upper bridge over the Fox river in said city of Green Bay.

"That, as the master and those in charge of said vessel well knew before the fire before mentioned was set, several fires had caught on the shore from the sparks thrown out by said vessel, after she left her wharf and before she reached the point aforesaid, notwithstanding which the defendant negligently caused the said vessel to continue on her course along the shore as before described.

"That all of said matters happened within the city of Green Bay, a duly incorporated city of this state, duly authorized by its charter to regulate spark-arresters on steam-engines and steam-vessels run or operated within its limits.

"That there was in force at that time within the said city, duly passed by its mayor and council, an ordinance which, among other things, provided: 'It shall not be lawful for any

person or corporation within this city to operate any steam-engine, steam-tug, steamboat, propeller, mill, factory, or shop of any kind, whenever steam-power is used, without having first provided for the smoke-stack or chimney thereof a sufficient spark-catcher, screen, or some other device, to prevent the escape of sparks or burning cinders therefrom. Such spark-catcher, screen, or other device shall be substantially attached in or upon such smoke-stack or chimney, and shall be kept in good repair, so as to prevent the escape of sparks or burning cinders therefrom as effectually as the same can be prevented by any means known or in use for that purpose.'

"That said vessel was at the time aforesaid being run, equipped, and operated negligently and unlawfully, in direct violation of such ordinance.

"That from the fire so set by said vessel the flames spread directly and proximately, without the intervention of any other cause, to the frame building occupied as a dwelling-house by the plaintiff *John Atkinson*, situated on the south side of Cherry street, on lot 670, in the Second ward of the city of Green Bay, and the personal property contained therein, which was thereby totally destroyed by the defendant's said negligent and unlawful acts, being then and there the property of the said *John Atkinson*, to his damage $1,548.75."

The answer of the defendant company was a general denial.

The evidence on the part of the plaintiffs on the trial in the circuit court showed that the steamboat was not provided with a spark-catcher, as required by the ordinance of the city of Green Bay set forth in the complaint and given in evidence on the trial. There was also evidence tending to show that the boat was in other respects negligently and carelessly managed at the time by those in charge of her, and that by reason of such negligent and careless management the sparks emitted from the smoke-stack of said boat

were carried to the shore and kindled a fire in some shavings and sawdust lying near a planing-mill, and between the mill and the river dock; that the fire so kindled was communicated to the planing-mill which was burned, as well as a large number of other buildings in its neighborhood, which is spoken of by counsel as the first fire district, and extended about 1,600 feet from the planing-mill to Jackson street, in said city; that in this district thirty building were destroyed by the fire, and fifty-seven houses escaped the flames; that thence from Jackson street there was a space of about 1,650 feet in which no buildings were burned; and that the fire then broke out again in what is called the Kitchen House, in the second fire district, and spread from that house to the East river, a distance of 1,500 feet more. In this second fire district thirty-seven houses were destroyed, and among them the house of *Atkinson* and the personal property therein. The last house burned was 4,650 feet from the planing-mill. The *Atkinson* house burned was about 3,500 feet from the said mill. The line of fire was, as claimed by the plaintiffs and as their testimony tends to show, in the direction in which the wind was blowing when the boat steamed up the river and emitted the sparks from her chimney which kindled the fire near the planing-mill. The evidence tends strongly to show that all the buildings in what is called the first fire district were burned from sparks and brands carried by the wind from the mill to buildings in the vicinity and from such buildings to others in succession, and that the fire was kindled in what is called the Kitchen House, in the second fire district, by sparks or brands carried by the wind from the burning buildings in the first fire district. The *Atkinson* building did not take fire until about an hour after the planing-mill caught fire. Upon the evidence given on the trial we think there can be no reasonable question that the jury were justified in finding that the fire was kindled in the shavings and sawdust near the planing-mill by the sparks

emitted from the smoke-stack of the steamboat while steaming up the river; that the fire so kindled spread in a few minutes to the planing-mill; and that all the other buildings burned in both the burned districts were destroyed by reason of sparks and brands of fire carried by the wind from one burning building to another.

The evidence also tends to show that at the time the steamboat left her dock to proceed up the river the wind was blowing at the rate of twenty-five or thirty miles an hour from the southwest, in a direction to carry the sparks emitted from the smoke-stack directly towards the buildings upon the shore, and that it was a very dry time; that the shore was covered with wooden buildings and other combustible matter, and that this latter fact was known to some of the officers in charge of the boat at the time. The evidence on the part of the plaintiff also tended to show that the boat labored hard to make headway up the stream and against the wind; that the steam exhaust was inside of the smoke-stack, and an unusually large quantity of sparks were emitted from the smoke-stack. This evidence was contradicted by the witnesses on the part of the defendant; but, upon the whole evidence, these matters were all clearly questions of fact for the jury.

At the close of the evidence the defendant moved for a nonsuit, which was denied. The defendant then requested that the jury find a special verdict; and thereupon the court ordered and directed a verdict as follows:

"The jury are directed to find the following facts, and do find as follows:

"1. That the *Phœnix Insurance Company* and the *Goodrich Transportation Company* are and were corporations at all the times alleged in the complaint, as therein alleged.

"2. That at the time of the fire in question the defendant was the owner of a line of steamboats, including the steamboat Oconto, and that said steamboat Oconto was, at that

time, engaged in the business of running between different ports on Lake Michigan and the waters tributary thereto, and in such business touched regularly at ports in the states of Illinois, Wisconsin, and Michigan on each trip.

"3. That the steamboat Oconto at said time was of the burthen of 505 35-100 tons, was engaged in carrying freight and passengers, and was duly enrolled and licensed under the laws of the United States so to do, and by said license, duly issued, was authorized, in terms, 'to be employed in carrying on the coasting and foreign trade for one year from the 5th day of May, 1880, on the northern, northeastern, and northwestern frontier, otherwise than by sea.'

"4. That prior to said fire, on the 15th day of March, 1880, the said steamboat Oconto had been duly inspected, pursuant to the laws of the United States, by the duly appointed government inspectors, and found by them to be in every respect constructed and equipped as required by such laws and the regulations duly made pursuant thereto; and that said boat was so constructed and equipped at the time of said fire.

"5. That a spark-catcher was not required in or upon the smoke-stack of said boat by said inspectors.

"6. That said steamboat, at the time of said fire, had no spark-catcher upon or in the smoke-stack thereof, but was provided with an exhaust outside the smoke-stack and an adjustable flue-cap and dampers.

"7. That, equipped as aforesaid, said steamboat left her dock on said 20th day of September, 1880, at the foot of Pine street in the city of Green Bay, on her way to Depere, and in so doing passed along Fox river, and through the west side of the draw of the bridge at the foot of Mason street in said city.

"8. That after said boat passed said Mason street bridge on said day, a fire broke out in the three-story frame planing-mill situated near the easterly end of said bridge, and

about 360 feet northerly therefrom, near the edge of said river.

" 9. That said planing-mill was fired from fire catching in the shavings and sawdust on the ground in the rear of said planing-mill, and between it and the river.

" 10. That shavings and sawdust extended from the rear of said planing-mill to near the edge of the dock in the rear thereof, 110 feet.

" 11. That on said 20th day of September, 1880, the house of the plaintiff *Atkinson*, situated on lot 670 in said city of Green Bay, according to the recorded plat of Navarino, was destroyed by fire, and also a portion of the personal property ·of said *Atkinson* therein situated.

" 12. That at the time said house was so destroyed, the plaintiff *Atkinson* had a policy of insurance thereon in the sum of $700, in the *Phœnix Insurance Company*, the co-plaintiff of said *Atkinson* in this action.

" 13. That on September 23, 1880, the said insurance company paid said sum of $700 to said *Atkinson*, and said *Atkinson*, assigned whatever claim he had against the defendant for the destruction of said building to said insurance company, to the extent of said $700."

The jury were directed to answer the following questions:
: " 1. Was the planing-mill near the upper, or Mason street, bridge, in the city of Green Bay, set on fire and burned by sparks and cinders thrown out of the steamer Oconto, at the time named in the complaint, into shavings and sawdust on the ground and dock in the rear of the planing-mill? *Answer.* Yes.

" If you answer ' No ' to question number one, you need not answer any of the following questions; but if you answer ' Yes ' to question number one, you must then answer the following:

" 2. Was such fire set by a want of ordinary care on the part of the defendant and of its agents and servants in

Atkinson and another vs. The Goodrich Transportation Co.

charge of the steamer, in not having it equipped with a spark-catcher?  *A.* Yes.

"3. Were the servants of the defendant in charge of the steamer guilty of ordinary neglect in running it from its dock up the river, under all the circumstances of the case existing at the time named in the complaint?  *A.* Yes.

"If you answer 'No' to question number three you need not answer the next question; but if you answer 'Yes' to question number three, then answer the next question.

"4. Was the planing-mill set on fire and burned through such negligence of the servants of the defendant in running the steamer Oconto?  *A.* Yes.

"5. Was the burning of the plaintiff *John Atkinson's* house the natural result of the burning of the planing-mill?  *A.* Under the circumstances, yes.

"6. Was the house of the plaintiff *John Atkinson* burned through any want of ordinary care on his part contributing thereto.  *A.* No.

"7. What was the value of *Atkinson's* house at the time of the fire by which it was destroyed?  *A.* $750.

"8. What was the value of *Atkinson's* personal property destroyed by the fire?  *A.* $400.

"9. Did the fire which destroyed the planing-mill extend to and destroy the house of the plaintiff *Atkinson*?  *A.* Yes.

"10. Could the plaintiff *Atkinson* have saved his personal property by reasonable care and prudence?  *A.* Under the circumstances, no.

"11. Was the owner or those in charge of the planing-mill guilty of ordinary negligence in allowing shavings and sawdust to accumulate and remain in the rear of the planing-mill?  *A.* Yes.

"12. Would the planing-mill have burned had it not been for the accumulation of shavings and sawdust in the rear of the planing-mill?  *A.* Under the circumstances, yes.

"13. What is the amount of the interest, at seven per

cent. per annum, from the day this suit was commenced, to wit, from October 25, 1880, until this day, upon the value of the house and personal property of the plaintiff *John Atkinson*, burned by the fire in question in this cause? *A.* $174.41.

"14. Considering the force and direction of the wind and dryness of the weather, was it probable, on the day of the fire in question, that if a fire was set by the steamer Oconto at the planing-mill, or between that mill and McCormick's dock, that the fire would spread and extend over a large territory in the city of Green Bay? *A.* Yes."

The defendant excepted to the fifth finding directed by the court, and asked that it be amended by adding the following: " because said inspectors were of the opinion that such spark-catcher endangered the safety of the boat, and that the balance of safety was against its use;" also, to the sixth finding directed, and requested that there be added to such finding the following words: " which constituted in the opinion of said inspectors the only spark-arresters compatible with the safety of the boat." The defendant also excepted to each question propounded to the jury in the special verdict, and submitted thirty-two questions, which it requested the court to require the jury to answer as their special verdict. Among the questions so requested to be submitted, were the following:

"21. Was it reasonable to expect at the time the Oconto passed the planing-mill that sparks, cinders, or coals from the smoke-stack would set fire to the planing-mill?"

"23. Was it reasonable to expect that the fire which destroyed the planing-mill would extend to and destroy the house of the plaintiff *Atkinson ?*"

"31. Was it reasonable to expect when the Oconto was passing the planing-mill that the fire from her smoke-stack would extend to and burn *Atkinson's* house?

"32. Was it reasonable to expect when the boat passed

the planing-mill that the fire caused by burning the planing-mill would extend as far as *Atkinson's* house?"

The court refused to submit any of the questions as requested by the defendant. The only questions submitted by the court to the jury, having any relation to the subject of the questions above requested by the defendant and refused, are the following:

"5. Was the burning of the plaintiff *John Atkinson's* house the natural result of the burning of the planing-mill?"

"14. Considering the force and direction of the wind and dryness of the weather, was it probable, on the day of the fire in question, that if a fire was set by the steamer Oconto at the planing-mill, or between that mill and McCormick's dock, that the fire would spread and extend over a large territory in the city of Green Bay?"

The counsel for the defendant asked the court to instruct the jury as follows:

"1. You cannot answer question number five 'Yes' unless you find that while the boat was passing the planing-mill it was reasonable to expect sparks, cinders, or coals from her smoke-stack would cause the destruction by fire of *Atkinson's* house.

"2. You cannot answer question number five 'Yes' unless you find that in passing the planing-mill as she did, it was reasonable to expect that sparks, cinders, or coals from the Oconto would cause a fire which would extend as far as *Atkinson's* house.

"3. Unless you find from a fair preponderance of the testimony that the burning of *Atkinson's* house was the consequence of sparks, coals, or cinders from defendant's boat in passing the planing-mill, and a consequence which was probable and might reasonably have been foreseen as the consequences of such sparks, cinders, or coals, the plaintiffs cannot recover in this action."

These instructions were refused, and exceptions were duly taken.

After a careful reading of the charge given by the learned circuit judge, we are of the opinion that the instructions asked were not given to the jury either in form or substance. If, then, the defendant was entitled to the instructions asked, it was error to refuse them.

The following instruction given to the jury was duly excepted to by the defendant:

"The ordinance of the city of Green Bay, which is in evidence and prohibits any person or corporation within the city from operating any steam-engine, steam-tug, or steamboat, propeller, mill, factory, or shop of any kind wherein steam-power is used, without first having provided for the smoke-stack or chimney thereof a sufficient spark-catcher, screen, or other device to prevent the escape of sparks or burning cinders therefrom as effectually as the same can be prevented by any means known or in use for that purpose, includes the steamboats of the defendant company while voluntarily visiting the port of Green Bay, and in leaving the same, while they are within the city limits. And if the jury find from a preponderance of the evidence that, at the time complained of, the defendant ran the steamer Oconto in the river, within the limits of the city of Green Bay, in violation of this ordinance, and without a spark-catcher or other device to prevent the escape of sparks and cinders from the smoke-stack of the vessel, and if, by so doing, sparks and cinders did escape and set fire to a planing-mill near Mason street bridge, in the city of Green Bay, and that the fire so set by force of the wind then prevailing was spread and carried forward until it reached and burned the house and property of *John Atkinson*, one of the plaintiffs in this case, without any ordinary neglect on his part contributing to the injury, the jury would be justified in finding the defendant guilty of ordinary neglect in the premises, and in

answering 'Yes' to questions number one, two, three, four, five, and six."

"Without regard to the city ordinances of Green Bay, it was the legal duty of the defendant, and of its agents and servants in charge of the Oconto, to have it provided with the best means in common use on the great lakes for the purpose of catching sparks or of preventing sparks from escaping from the smoke-stack of the boat and alighting upon combustible buildings and material on the docks or shores that she visited, and to have those means in use while the vessel was navigating the river within the limits of the city of Green Bay.

"If the boat was not furnished with the best equipments in common use upon the great lakes for that purpose, or if the boat had such equipments, but they were not in use at the time complained of, and if, from want of such equipments, or if from a failure to have them in use at the time complained of, sparks and cinders of fire escaped from the stack of the boat and set fire to buildings near Mason street bridge, in the city of Green Bay, which by force of the wind was spread and advanced until it burned the property of the plaintiff *Atkinson*, without any ordinary neglect on his part contributing to the same, the jury would be justified in finding that the defendant and its agents had been guilty of ordinary neglect, and in answering 'Yes' to questions number one, two, three, four, five, and six."

The ordinance referred to in the above instructions and given in evidence on the trial is set out at length in the complaint.

In view of the fact that we are all of the opinion that the question of the defendant's liability in this action is a question of fact for the jury, and not of law for the court, the foregoing statement sufficiently sets out the questions for our determination on this appeal.

For the appellant there were briefs by *Ellis, Greene· &*

*Merrill*, and oral argument by *Mr. Greene*. They contended, *inter alia*, that it conclusively appeared that the burning of *Atkinson's* house was a *consequential* injury, and was a result not reasonably to have been expected from defendant's alleged wrongful acts. It was error, therefore, to refuse a nonsuit. *Mil. & St. P. R'y Co. v. Kellogg*, 94 U. S., 475; *Scheffer v. R. R. Co.*, 105 id., 249; *Kellogg v. C. & N. W. R'y Co.*, 26 Wis., 223; *Patten v. C. & N. W. R'y Co.*, 32 id., 524, 536, note; *Borchardt v. Wausau Boom Co.*, 54 id., 107; *Jucker v. C. & N. W. R'y Co.*, 52 id., 150; *Henry v. S. P. R. R. Co.*, 50 Cal., 176, 183; *McDonald v. Snelling*, 14 Allen, 290; *Hoadley v. Northern Transp. Co.*, 115 Mass., 304; *Fent v. T., P. & W. R'y Co.*, 59 Ill., 349; *Penn. R. R. Co. v. Kerr*, 62 Pa. St., 353; *Penn. R. R. Co. v. Hope*, 80 id., 373; *Hoag v. L. S. & M. S. R. R. Co.*, 85 id., 253; 27 Am. Rep., 653; *Lehigh Valley R. R. Co. v. McKeen*, 90 Pa. St., 122; *Ryan v. N. Y. C. R. R. Co.*, 35 N. Y., 210; *Webb v. R., W. & O. R. R. Co.*, 49 id., 420; *Pollett v. Long*, 56 id., 200; *Harris v. U. P. R'y Co.*, 13 Fed. Rep., 591; *Hughes v. McDonough*, 43 N. J. Law, 459; *Annapolis & E. R. R. Co. v. Gantt*, 39 Md., 115; *D., L. & W. R. R. Co., v. Salmon*, 39 N. J. Law, 299; 2 Thomp. on Neg., 1084–85; Cooley on Torts, 77; 1 Addison on Torts, 6; Mayne on Dam., 26, 27; 1 Sedgw. on Dam., 131, note. The ordinance of the city of Green Bay is unreasonable. If the owner of a boat in selecting a spark-catcher from the thousand different kinds fails to get one as good as some other either *known or in use*, no matter how generally known or how commonly in use, he is subject to the penalty. And the question whether there is such superior spark-catcher must in each case be left to a jury upon the opinions of experts. 1 Dillon on Mun. Corp., secs. 319–321; *Read v. Morse*, 34 Wis., 315; *Spaulding v. C. & N. W. R'y Co.*, 30 id., 110; *S. C.*, 33 id., 589. The ordinance, if valid, was not competent to prove negligence. The only consequence of a breach was the penalty.

Atkinson and another vs. The Goodrich Transportation Co.

Whether such breach was negligence must be determined on common law principles. *Vandyke v. Cincinnati*, 1 Disney (O.), 532; *P. & R. R. R. Co. v. Ervin*, 89 Pa. St., 71; *Heeney v. Sprague*, 11 R. I., 456; 23 Am., Rep., 502; *Kirby v. Boylston Market Asso.*, 14 Gray, 249; *Flynn v. Cunton Co.*, 40 Md., 312; 17 Am. Rep., 603; 7 Am. & Eng. R. R. Cas., 409, note; *Eastman v. Meredith*, 36 N. H. 284; *Bigelow v. Randolph*, 14 Gray, 541; Cooley on Torts, 653 *et seq.* Even if admissible, the ordinance was not *conclusive* evidence of negligence. *Knupfle v. Knickerbocker Ice Co.*, 84 N. Y., 488; *Burbank v. Bethel Steam Mill Co.*, 75 Me., 373; *P. & R. R. R. Co. v. Ervin*, 89 Pa. St., 205; *Kirby v. Boylston Market Asso.*, 14 Gray, 249; 111 Mass., 136; 2 Am. & Eng. R. R. Cas., 183.

For the respondents there was a brief by *Vroman & Sale* and *Cameron, Losey & Bunn*, and oral argument by *Mr. Bunn*.

Taylor, J.. The learned counsel for the defendant has presented a very forcible argument, in which he endeavors to distinguish this case from the case of *Kellogg v. C. & N. W. R'y Co.*, 26 Wis., 223, and *Brown v. C., M. & St. P. R'y Co.*, 54 Wis., 342, and presses upon this court the propriety of limiting the liability of a person who negligently sets fire to a building, either to the value of the building first fired, or at most not to extend the liability beyond such other buildings as were necessarily destroyed by the mere fire of the conflagration of the first; and he insists that this court ought to hold, as a matter of law, that the burning of the plaintiff's building in this case is a purely consequential and remote result of the fire kindled by the negligence of the defendant, and that its destruction was not the immediate or proximate result of the negligence of the defendant, admitting that the company is chargeable with negligence in firing the planing-mill.

After a careful consideration of the argument of the learned counsel, we think that both the weight of authority and reason is against the rule contended for, and that the rule laid down by this court in *Kellogg v. C. & N. W. R'y Co.* and *Brown v. C., M. & St. P. R'y Co.*, *supra*, and by the supreme court of the United States in the case of *Mil. & St. P. R'y Co. v. Kellogg*, 94 U. S., 469, in which the case of *Kellogg v. C. & N. W. R'y Co.*, 26 Wis., 223, was quoted and approved, is the rational and better rule.

In the case in 94 U. S., *supra*, the court say: "The true rule is that what is the proximate cause of the injury is ordinarily a question for the jury. It is not a question of science or legal knowledge. It is to be determined as a fact in view of all the circumstances of fact attending it. The primary cause may be the proximate cause of the disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied at the other end, that force being the proximate cause of the movement; or as in the oft-cited case of the squib thrown in the market-place. 2 Bl. Rep., 892. The question always is, Was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and injury? It is admitted that the rule is difficult of application. But it is generally held that in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of the injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances. These circumstances, in a case like the present, are the strength and direction of the wind, the combustible character of the elevator, its great height, and the proximity and

combustible nature of the saw-mills and piles of lumber."
Pp. 474, 475.

We have taken the liberty of quoting at length from the
case above cited, for the reason that the doctrine of the case
has been approved by this court, and because the facts of
that case are quite similar to the facts of the case at bar.
The rule laid down in the case above cited has been ap-
proved by the following cases cited by the learned counsel
for the respondent in his brief: *Perley v. Eastern R. R.
Co.*, 98 Mass., 414; *Higgins v. Dewey*, 107 Mass., 494; *Ins.
Co. v. Tweed*, 7 Wall., 44; *Ins. Co. v. Boon*, 95 U. S., 117;
*Brady v. N. W. Ins. Co.*. 11 Mich., 425; *St. John v. A. M.
F. & M. Ins. Co.*, 11 N. Y., 519; *Butler v. Wildman*, 3
Barn. & Ald., 398; *Lund v. Tyngsboro*, 11 Cush., 563; *Bar-
ton v. Home Ins. Co.*, 42 Mo., 156; *Marcy v. M. M. Ins. Co.*,
19 La. Ann., 388; *Fent v. T., P. & W. R'y Co.*, 59 Ill., 349;
*Hoyt v. Jeffers*, 30 Mich., 181; *A. & E. R. R. Co. v. Gantt*,
39 Md., 115, 141; *Kuhn v. Jewett*, 32 N. J. Eq., 647; *Van-
denburg v. Truax*, 4 Denio, 464. The only cases which hold
a different doctrine from that above cited are *Ryan v. N.
Y. C. R. R. Co.*, 35 N. Y., 210, and *Penn. R. R. Co. v.
Kerr*, 62 Pa. St., 353. These cases were noticed and disap-
proved by this court in the case of *Kellogg v. C. & N. W.
R'y Co.*, 26 Wis., 223, as well as in many of the other cases
above cited. The rule established by the cases above cited
is approved in the English courts in the following cases:
*Vaughan v. Taff Vale R'y Co.*, 3 Hurl. & N., 743; *Smith v.
L. & S. W. R'y Co.*, L. R. 5 C. P., 98; *Collins v. Middle
Level Commissioners*, L. R. 4 C. P., 279; *Romney Marsh v.
Trinity House*, L. R. 5 Exch., 204; *S. C.*, affirmed, L. R. 7
Exch., 247; *Sneesby v. L. & Y. R'y Co.*, L. R. 9 Q. B., 263;
*The George and Richard*, L. R. 3 Adm. & Ecc., 466; *Byrne
v. Wilson*, 15 Ir. C. L., 332; *Jones v. Boyce*, 1 Stark., 493.
Many other cases, both in England and in this country,
might be cited holding the same general doctrine, but the

foregoing we deem sufficient to fully justify, if any justification were necessary, the doctrine announced and approved of in the cases above cited from this court. In our opinion, upon the evidence in this case, it was for the jury, and not the court, to say whether the negligence of the defendant was the proximate cause of the burning of the *Atkinson* house.

But the learned counsel for the appellant insists that the *Atkinson* house was at so great a distance from the point where the fire was kindled, admitting it to have been kindled by the negligence of the defendant, that there could be no reasonable apprehension on the part of an ordinarily prudent man that the fire so kindled would extend to and burn such house. That question is also a question for the jury, and not of law for the court. The force of the wind at the time, the dryness of the season, and the combustible nature of the buildings intervening between the place where the fire was kindled and the place where the plaintiff's house stood, were all facts to be considered in determining whether there was a reasonable probability that the fire would extend so far, and the jury must pass upon these facts as bearing upon the question of reasonable probability. The learned counsel for the appellants cite the case of *T.,  W. & W. R'y Co.  v.  Muthersbaugh,* 71 Ill., 572, as bearing upon this question. If that case was properly decided, we think the facts are so different from the facts in the case at bar as not to have any considerable force in the decision of this case. In that case the building burned was about 100 rods from the building first fired by the negligence of the railway company, and there were no intervening buildings or combustible matter between the two buildings which might be a means of conveying the fire from the one to the other, and the court held, as a matter of law, that there was no reasonable probability of the fire extending from the first building to the second, and so directed a verdict for the

Atkinson and another vs. The Goodrich Transportation Co.

defendant. The facts in that case and the case at bar are so entirely different that the case is no authority for holding that the question as to the probability of the fire extending to the plaintiff's house is a question of law in this case.' Judge COOLEY, in his work on Torts, p. 77, says: "The negligent fire is regarded as a unity; it reaches the last building as a direct and proximate result of the original negligence, just as a rolling stone put in motion down a hill, injuring several persons in succession, inflicts the last injury as the proximate result of the original force as directly as it does the first, though if it had been stopped on the way and started anew by another person, a new cause would thus have intervened back of which any subsequent injury could have been traced. Proximity of cause has no necessary connection with continuity of space or nearness in time."

On the whole evidence in the case we think there was no error in refusing to order a nonsuit, or in refusing to direct a verdict for the defendant.

We will now consider the exceptions taken to the admission of the evidence objected to by the defendant, the exceptions to the rulings of the court as to the questions which should be submitted to the jury for their special verdict, the instructions asked by the defendant and refused, and the instructions given to which exceptions were taken.

The objections to the evidence relate to the ordinance of the city of Green Bay, which was offered by the plaintiff as evidence. There are several objections raised by the learned counsel for the appellant to the validity of this ordinance: *First*, it is said to be a regulation of commerce, and therefore void; *second*, that it was a violation of the regulations of the inspectors of boats and vessels, and its use would endanger the boat, its cargo, and passengers; and, *third*, that it was an unreasonable ordinance. We do not feel called upon to determine whether the first and second objections to the ordinance were well taken, as we have come to the conclu-

sion that the ordinance should either have been rejected as an unreasonable ordinance, or its reasonableness should have been submitted to the jury. We are inclined to hold the ordinance unreasonable as a question of law, because it requires the boat-owner to use a spark-catcher, screen, or other device "substantially attached in or upon the smoke-stack or chimney, . . . so as to prevent the escape of sparks or burning cinders therefrom as effectually as the same can be prevented by any means known or in use for that purpose." Under this ordinance every steamboat-owner, no matter how careful he had been to use the means of preventing the sparks from escaping from the smoke-stack of his boat while navigating the harbor, would still be liable for a violation of the ordinance if a jury could be satisfied that his device was not the best known or in use; and if the ordinance is to be strictly enforced he would be equally liable although the device used was as effective for the purpose as any other, if it were not substantially attached in or to the smoke-stack. Amidst the hundreds of devices known or used it would be very difficult, indeed, for the steamboat-owner to satisfy the requirements of the ordinance, and more difficult to satisfy a jury that he had in fact adopted the best known one in use. A law which inflicts a penalty or punishment ought to be so plainly drawn as to clearly point out the act to be punished. This ordinance fails to do that, and is therefore, we think, unreasonable. *Clason v. Milwaukee*, 30 Wis., 316; *Hayes v. Appleton*, 24 Wis., 542; *Barling v. West*, 29 Wis., 307. If the evidence tended to show that a spark-catcher or other device fixed in or upon the smoke-stack of the boat endangered its cargo or passengers, then it would be a question for the jury whether such an ordinance was a reasonable one.

We think the court erred in permitting the ordinance to be read to the jury, and in instructing the jury that it was negligence *per se* on the part of the defendant to run its

boat into the harbor of Green Bay without first having provided it with a spark-catcher as required by the ordinance.

The appellant insists that the court erred in refusing to submit the questions above set out in the statement of facts to the jury as a part of their special verdict, and in refusing to give the instructions requested. These questions and instructions asked fairly raise the question whether, in an action to recover damages for the negligent act of the defendant, the plaintiff must, in order to establish the fact that the negligence of the defendant was the proximate cause of the injury complained of, show that it was reasonable to expect that such injury would result from such negligence. This question was, we think, answered in the affirmative by the supreme court of the United States in the case of *Mil. & St. P. R'y Co. v. Kellogg, supra,* (94 U. S., 469). The language of the court is as follows: " But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of the injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." This language is repeated by the learned judges who delivered the opinions in many of the cases above cited, in different forms, but all the judges using similar language seem to hold that negligence cannot be fairly said to be the proximate cause of an injury unless it appears to be the natural and probable consequence of the wrongful act, and that it might or ought to have been foreseen under all the circumstances. Some of the cases use this language: " The injury or the destruction of the property complained of was a result that might have been reasonably expected (though not, in fact, anticipated) from the defendant's negligent act." *Del., L. & W. R. R. Co. v. Salmon,* 39 N. J. Law, 311. The late learned Chief Justice Dixon, in his very able and exhaustive discussion of this

question in *Kellogg v. C. & N. W. R'y Co.*, *supra*, (26 Wis., 281), uses this language: "It will be observed that the rule, as we find it laid down and as we believe it to be, is *not* that the injury sustained *must* be the *necessary* or unavoidable result of the wrongful act, but that it shall be the natural and probable consequence of it or one likely to ensue from it." Judge REDFIELD states the rule thus: "The defendant is liable for all those consequences which might have been foreseen and expected as the result of his conduct, but not for those which he could not have foreseen and was therefore under no moral obligation to take into consideration." Cooley on Torts, 78, note. It would be an endless task to cite all the different forms of expression used by judges and writers to express the idea above stated.

The counsel for the appellant requested the circuit judge to instruct the jury as follows: "You cannot answer question number five 'Yes' unless you find that while the boat was passing the planing-mill it was reasonable to expect that sparks, cinders, or coals from her smoke-stack would cause the destruction of *Atkinson's* house." This instruction was refused, and it was repeated in different ways, but in substance the same, and all were rejected. Question five reads as follows: "Was the burning of the plaintiff *John Atkinson's* house the natural result of the burning of the planing-mill?" The court had refused to submit to the jury the question: "Was it reasonable to expect that the fire which destroyed the planing-mill would extend to and destroy the house of the plaintiff *Atkinson?*" and the other question: "Was it reasonable to expect when the boat passed the planing-mill that the fire from her smoke-stack would set fire to the planing-mill?" These two questions the court refused to submit to the jury, and, instead, submitted number five above quoted, so that the defendant was prevented from having the questions passed upon by the jury, unless the court instructed them as requested, although it did not follow logic-

ally that the jury might not have answered "Yes" to number five without finding that it was reasonable to expect that sparks, cinders, and coals from the smoke-stack would cause the destruction of the plaintiff's house.

We think the decided weight of authority is in favor of the rule that in an action for negligence the defendant has the right to have the question submitted to the jury whether the result which is the ground of action might, under all the circumstances have been reasonably expected, not by the defendant, but by a man of ordinary intelligence and prudence; and we think it very clear that no such question was submitted to the jury either by the special verdict or by the instructions given. It would seem that it is not enough to prove that the result is the natural consequence of the negligence, although that fact would be evidence tending to show that it might have been reasonably expected.

The question whether a result may or may not be reasonably expected to follow certain acts is very material upon the question of negligence. A person is not called upon to use that degree of care against an improbable result which he would be bound to use against a probable one. The contradictory evidence in this case, as to the direction of the wind at the time the boat was passing up the river, is an apt illustration of the rule. If it had been conclusively established that the wind was blowing directly down the river, as contended for by the defendant's witnesses, and so carrying the sparks emitted from the smoke-stack away from the buildings on the shore and over the water of the river, there would have been the greatest improbability of their setting fire to any of the buildings on the shore; and if, by some unexpected and unexplained cause, the sparks from the smoke-stack had ignited a building on the shore, no jury in such case would be likely to say that such an accident should have been foreseen or have been reasonably expected to

occur from so running the boat.  On the other hand, if the evidence had been conclusive that the wind was blowing directly towards the shore, and carrying the sparks in that direction and among the buildings there situated, they could have well found that such an accident could have been reasonably expected as the result.  A man is not bound to ward against a result which cannot be reasonably expected to occur, and negligence cannot be attributed to him for failing to do so.  This is recognized by all courts in holding that a man in building a dam across a stream of water is not liable for damage which may result from an overflow above the dam, or from the destruction of property below by its giving way, if such overflow or breaking of the dam is caused by such an extraordinary flood as occurs only at very long intervals.  He is only bound to·guard against those floods which may reasonably be expected to and do occur as ordinary events.  See *Borchardt v. Wausau Boom Co.*, 54 Wis., 107, and cases cited.

The circumstances which do in fact exist are to be determined by the jury from all the evidence; and when they have determined what the circumstances were at the time, then they can, with some reasonable degree of certainty, determine the question whether the result could have been reasonably expected to occur, in the light of such circumstances.  As this question was not submitted to the jury as a fact for them to find in their special verdict, and as the court refused to instruct them that in order to charge the defendant with liability for the damage done to the plaintiffs they must find that under all the circumstances the destruction of the plaintiff's house could have been reasonably expected to occur as the result of the defendant's negligence, the circuit court committed an error for which the judgment must be reversed.

We do not understand that this ruling is in conflict with the case of *Brown v. C., M. & St. P. R'y Co.*, 54 Wis., 342.  In

that case the contention was that the court should, as a question of law, determine that the damages sought to be recovered were not the result of the defendant's negligence. The question in that case was the same as raised by the defendant in this, on his motion for a nonsuit, which we hold was properly overruled in this case.

Another point was pressed with a great deal of earnestness upon the court by the learned counsel for the appellant, as conclusive against the right of the plaintiffs to recover. The jury found that the owner of the planing-mill was negligent in permitting shavings and sawdust to remain and accumulate between the mill and the dock, under the circumstances developed by the evidence, and it also appears quite conclusively that the fire which was kindled by the sparks emitted from the smoke-stack of the defendant's boat (if any such fire was kindled) was kindled in these shavings and sawdust, and spread to the mill and fired that. It is claimed by the learned counsel that this negligence of the mill-owner was such an intervening cause between the negligence of the defendant and the final destruction of the plaintiff's house that its destruction must be, in the law, attributed to such intervening cause, viz., the negligence of the mill-owner. The learned counsel for the appellant cites Wharton on Negligence as sustaining his proposition. Although this learned author has gone as far, if not farther, than any other in sustaining the views of the learned counsel, we think he does not sustain him upon the facts of the case at bar. In Wharton on Negligence, sec. 144, the author lays down this proposition: "The fact that another person contributed, either before the defendant's interposition, or concurrently with such interposition, in producing the damage, is no defense." He gives the following as an illustration of the rule: "A. negligently leaves certain articles in a particular place. B. negligently meddles with them: Supposing B.'s negligence to be made out, and he a

responsible person, under the limitations above expressed he cannot set up A.'s prior negligence as a defense." This rule, applied to the case at bar, shows that the steamboat company is liable for the results of the fire kindled in the shavings negligently suffered to remain on the dock by the owner of the planing-mill, when it is once clearly established that they were fired by the negligence of the defendant. When the defendant sets them on fire by reason of its negligence, B. negligently meddles with them, within the rule stated by the learned author.

Whether we consider the negligence of the owner of the planing-mill as an interposition before or concurrently with the negligence of the defendant in producing the damage, it is no defense to the plaintiffs' action. This we think is fully established by nearly all the authorities, and, as we understand the rule as stated by Wharton, is not denied by him. In one sense the negligence of the owner of the planing-mill was concurrent with the negligence of the defendant. The negligence of the owner of the mill was a continuing negligence; it was present and acting at the time of the negligence of the defendant; it aided in kindling the fire and spreading it to the mill, and from that to the surrounding buildings. The authorities cited by the learned counsel for the respondents fully establish the fallacy of this objection made by the appellant. Cooley on Torts, 79; *Ricker v. Freeman*, 50 N. H., 420; *Lake v. Milliken*, 62 Me., 240; *Bartlett v. B. G. L. Co.*, 117 Mass., 536; *Johnson v. C., M. & St. P. R'y Co.*, 31 Minn., 57; *Small v. C., R. I. & P. R. R. Co.*, 55 Iowa, 582; *Burrows v. M. G. & C. Co.*, L. R. 5 Exch., 67; *Oil City Gas Co. v. Robinson*, 99 Pa. St., 1; *Rylands v. Fletcher*, L. R. 3 Eng. & Ir. App., 337; *Child v. Hearn*, L. R. 9 Exch., 183; *Illidge v. Goodwin*, 5 Car. & P., 190; *Davis v. Garrett*, 6 Bing., 716; *Greenland v. Chaplin*, 5 Exch., 247; *Lynch v. Nurdin*, 1 Q. B., 29; *Griggs v. Fleckenstein*, 14 Minn., 81; *Pastene v. Adams*, 49 Cal., 87;

Atkinson and another vs. The Goodrich Transportation Co.

*Lane v. Atlantic Works*, 107 Mass., 104; *Powell v. Deveney*, 3 Cush., 300; *Weick v. Lander*, 75 Ill., 93; *Del., L. & W. R. R. Co. v. Salmon*, 39 N. J. Law, 309; *The George and Richard*, L. R. 3 Adm. & Ecc., 474; *Collins v. Middle Level Comm'rs*, L. R. 4 C. P., 279; *Romney Marsh v. Trinity House*, L. R. 5 Exch., 204; *Binford v. Johnson*, 22 Am. Law Reg., 50–56; *Sneesby v. L. & Y. R'y Co.*, L. R. 9 Q. B., 266; *Crandall v. Goodrich Transp. Co.*, 16 Fed. Rep., 82; *Stetler v. C. & N. W. R'y Co.*, 46 Wis., 497; *S. C.*, 49 Wis., 609, 622. The cases above cited also show that the alleged want of care on the part of the fire department of the city of Green Bay, or the negligence of such department at the time of the fire, or the fact that by reason of the dry weather there was no water in the cisterns, are no defense to the plaintiffs' action. *Salsbury v. Herchenroder*, 106 Mass., 458; Wharton on Neg., sec. 145.

Other exceptions were taken to instructions given to the jury on the question of negligence. It is claimed by the appellant that the court, in some of the instructions excepted to, assumed the functions of the jury by stating that the neglect of the defendant in not providing its boat with proper and adequate means for preventing the emission of sparks from the smoke-stack, would be negligence in law, instead of evidence of negligence. Usually the question of negligence is a question of fact for the jury and not of law for the court. The acts which can be declared negligence as a matter of law, should be such as to admit of but one reasonable answer. Whether running up the harbor of Green Bay with a steamer so equipped and managed as to emit a large quantity of sparks from the smoke-stack was negligence in law, would depend upon the attendant circumstances, the state of the weather, the direction and force of the wind, and the distance of the boat from the buildings upon the shores. We are inclined to think that the instruction quoted in the statement of the case, as excepted to, is

subject to the criticism which the learned counsel for the appellant makes upon it. The facts stated in the instruction, standing alone, would hardly justify the court in instructing the jury that they might find the defendant guilty of negligence. The facts stated in the instruction, taken in connection with the other circumstances claimed by the plaintiff to have existed, would undoubtedly justify such instruction; but if the attendant circumstances were such as were claimed by the defendant, such instruction would not be justified.

On account of the errors above indicated the judgment of the circuit court must be reversed.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.