Martin vs. Bishop and others.

---

'MARTIN vs. BISHOP and others.

*January 11 — January 29, 1884.*

*Negligence: Special verdict.*

1. The term " ordinary negligence " in a question submitted to the jury for a special verdict, is *held*, though inaccurate, not to have been misleading, where the charge to the jury clearly showed that " a want of ordinary care " was meant.
2. The defendants, who had contracted to thresh the plaintiff's grain, put in operation their steam-engine (used to furnish power to the threshing-machine) within four rods and upon the windward side

of several stacks of grain, on a hot, dry day, when the wind was blowing a gale. The stacks were destroyed by fire communicated from the engine. *Held* that, although the engine was furnished with all proper appliances to prevent the escape of fire, the defendants were guilty of negligence.

3. But the plaintiff, whose employees were assisting the defendants, having directed the placing of the engine, and, though present and knowing the danger, not having objected when it was put in operation, was guilty of contributory negligence. The facts being undisputed, a special finding of the jury that the plaintiff was not guilty of negligence is *held* to be but an erroneous conclusion of law.

APPEAL from the Circuit Court for *Outagamie* County.

The plaintiff owned several stacks of grain and employed the defendants, who owned a threshing-machine operated by steam-power, to thresh the same for him. While engaged in doing the work (the plaintiff being present) fire was communicated from the engine to the stacks and they were burned. This action is to recover damages for the loss, on the alleged ground that the fire was the result of the defendant's negligence. No question is raised on the pleadings.

A special verdict was found by the jury in the form of questions submitted to them, and their answers thereto, as follows: "1. Was the plaintiff the owner of the property burned and injured, at the time it was destroyed? *Answer.* Yes. 2. What was the value of the property burned and injured, at the time it was burned? *A.* $510. 3. What is the interest upon such amounts from the time of the commencement of this action — this suit? *A.* $23. 4. Were these stacks of grain set on fire by the engine in question, and by reason thereof so burned and injured? *A.* Yes. 5. Was such fire set and said property burned and destroyed and so injured by reason of the ordinary negligence of those running and operating said engine, separator, and machinery; and was such negligence the proximate cause of setting such

fire, and burning and destroying and so injuring said property? *A.* Yes. 6. Was said engine provided with means and appliances, within reach, to prevent the escape of fire, which, under the circumstances, it was reasonable to require to be adopted? *A.* Yes. 7. Under what arrangement and agreement between the defendants was this engine, separator, and machinery operated at the time of such destruction and injury of the property in question? *A.* Under an agreement that *O. D. Bishop* was to have one half of the earnings of threshing, and the other two defendants one half thereof. 8. Was this property so destroyed and injured while such engine, separator, and machinery was being operated under such agreement or arrangement? *A.* Yes. 9. While the said engine, separator, and machinery were being operated under such agreement between the defendants, did it, when threshing plaintiff's grain under contract with plaintiff to thresh the same, so burn and destroy and injure plaintiff's grain? *A.* Yes. 10. Had the plaintiff any control in the running, operating, care, and management of said engine, separator, and machinery while so threshing the plaintiff's grain under contract of employment to do said threshing? *A.* No. 11. Was it unsafe to thresh with steam power on that day? *A.* Yes. 12. Did the plaintiff know that it was dangerous to thresh on that day? *A.* Yes. 13. Was the plaintiff guilty of a slight want of ordinary care, contributing to the injury. *A.* No. 14. Did the plaintiff forbid the defendants to thresh on that day? *A.* No. 15. Was the engine, boiler, smoke-stack, and apparatus, used by the defendants, in a reasonable and safe and perfect condition for the purposes for which it was used? *A.* Yes. 16. Did the defendants set the engine and machine in a position to carry the straw as directed by the plaintiff? *A.* Yes. 17. Did the plaintiff direct the defendants to set their engine and machine in any other position than the place in which it was? *A.* No. 18. Was there a want

of ordinary care on the part of the plaintiff and defendants by commencing to thresh on that day? *A.* On the part of the plaintiff, no; on the part of the defendants, yes."

A motion by the defendants for a new trial was denied, and the court rendered judgment for the plaintiff for the amount of his loss as assessed by the jury. The defendants appealed from the judgment.

The cause was submitted for the appellants on the brief of *Charles W. Felker*, of counsel, and for the respondent on that of *Gabe Bouck.*

To the point that a plaintiff negligently exposing himself to a negligent injury cannot recover, counsel for the appellants cited: Wharton on Neg., sec. 300, and cases cited in note 3; *Potter v. C. & N. W. R'y Co.*, 21 Wis., 372; *Cunningham v. Lyness*, 22 id., 245; *C. & N. W. R'y Co. v. Goss*, 17 id., 428; *McCandless v. C. & N. W. R'y Co.*, 45 id., 365.

LYON, J. The *fifth* finding in the special verdict is, in substance, that the fire was communicated, and the plaintiff's grain destroyed, by reason of the want of ordinary care by the defendants, which was the proximate cause of the loss. The eighteenth finding reasserts the negligence of the defendants. The use of the term "ordinary negligence," in the *fifth* question submitted to the jury seems inaccurate; but it is clear from the charge of the learned circuit judge to the jury that he intended by that term "want of ordinary care," and it is hardly possible that the jury could have been misled by the inaccuracy.

The jury did not find the particular act or omission of the defendants upon which the findings that they were negligent were predicated. An examination of the testimony contained in the bill of exceptions (which is certified to con. tain all the testimony given on the trial) fails to disclose any evidence tending to show any negligence on their part other than the act of starting their engine when they did. The

machine was properly constructed and was provided with all appliances to prevent the escape of fire which could reasonably be required; hence, the case turns upon the question whether, under the circumstances, it was negligence to start the engine when it was started. The grain was burned in August. The undisputed evidence is that the weather was hot and dry; there was a very high wind blowing from the south at the time, and the engine was set about sixty-five feet south, or perhaps a little southwest of the stacks. The fire caught in the stacks within a few seconds — not more than a minute or a minute and a half — after the engine was started. It seems to us that the jury were abundantly justified in finding that it was negligence to start the engine under such circumstances. The best constructed engine emits some fire, and to put one in operation when standing within four rods of half a dozen stacks of grain, and on the windward side thereof, on a hot, dry day, when the wind was blowing a gale, and when any fire emitted from it would almost inevitably be carried into the stacks or loose straw about them, is, it seems to us, not only a want of ordinary care, but very gross negligence. On the evidence, therefore, we cannot disturb the findings that the defendants were negligent in starting their engine when they did.

But we are entirely unable to perceive on what grounds the jury acquitted the plaintiff of contributory negligence. He was present when the machine was set and started, and when the fire caught. He furnished the men to deliver the sheaves at the machine and to remove the straw and grain, and these men were at their posts in the discharge of their respective duties when the fire broke out. These facts, although not specially found, are undisputed. The jury found that the plaintiff knew it was dangerous to thresh on that day, but did not forbid the defendants to proceed with the work, and that the machine was set pursuant to his directions. Knowing the peril (which any man of ordinary

sense, being present, must have seen at a glance), it was the duty of the plaintiff to refuse to proceed with the threshing at that time, or at least to have directed that the machine be located on the other side of the stacks. He did neither, but allowed the threshing to proceed and his servants to aid therein. He was just as clearly guilty of negligence as were the defendants, and a finding that he was not is but an erroneous conclusion of law from the established facts in the case. *Hogan v. C., M. & St. P. R'y Co., ante,* p. 139.

*By the Court.*—The judgment is reversed, and the cause will be remanded for a new trial.