BERGER, Respondent, vs. ABEL & BACH COMPANY, Appellant.

*December 11, 1909—January 11, 1910.*

*Master and servant: Injury from defective or dangerous machinery:*
*Contributory negligence: Knowledge of danger: Duty of master*
*to give warning: Special verdict: Duplicity in questions: Ap-*
*peal: Harmless errors: Evidence: Expert testimony: Admissions:*
*Damages.*

1. In an action for injuries to an employee caused by a machine al-
leged to have been defective, it having been shown that the
machine was liable to make a dangerous motion, like that which
caused the injury, if the power was thrown off prematurely,
there was no error in permitting plaintiff to attempt to prove
by expert testimony that appliances to prevent such motion
could have been attached, and hence that such condition of the
machine constituted a defect.

2. Nor was it error, as against defendant, to strike out such testi-
mony at his request.

3. An employee whose hand was caught and crushed, while he was
performing a proper act in the course of his duty, by reason of
a secret danger in the operation of the machine at which he was
working, was not guilty of contributory negligence if he neither
knew nor, in the exercise of ordinary care, ought to have known
of such danger.

4. The question being whether the employer ought to have known
that an employee set to work at a machine was ignorant of a
secret danger in the operation thereof, if the facts were insuffi-
cient to charge the employee, in the exercise of ordinary care,
with knowledge, it seems that the employer, knowing what the
facts were, ought to be charged with knowledge of that insuffi-
ciency, especially where he also knew that the employee had
never worked at such a machine.

5. A question in a special verdict asking whether a party knew, or
in the exercise of ordinary care ought to have known, a certain
fact, is erroneous in form, but if answered in the negative the
duplicity becomes immaterial; and even when the answer is
affirmative, if the evidence did not tend to show actual knowl-
edge but merely that the party ought to have known the fact,
the jury may be assumed to have considered only the latter
part of the question and it may be held that the form of the
question did not affect any substantial right.

6. Where the special verdict as submitted adequately covers the
issues, a refusal to submit other questions is not error.

Berger v. Abel & Bach Co. 141 Wis. 321.

7. A written notice of injury served by plaintiff on defendant under subd. 5, sec. 4222, Stats. (1898), about a month before the action was commenced, was in the nature of an admission deliberately made that the damages did not exceed the sum stated in such notice, and was admissible on the question of the amount of damages, even though the action, in which a larger sum was claimed, was commenced within a year after the injury.

8. An award of $6,502 for an injury to a trunkmaker twenty-four years old, whose hand was so crushed as to necessitate amputation of three fingers, is *held* excessive and reduced to $5,000. Winslow, C. J., dissents.

Appeal from a judgment of the circuit court for Milwaukee county: J. C. Ludwig, Circuit Judge. *Modified and affirmed.*

Personal injuries. The plaintiff had his left hand crushed while operating an embossing machine in the defendant's trunk factory June 25, 1906. He was twenty-four years of age at the time. In his complaint he charged that the machine was defective and that he was not warned of the danger when set at work. Both grounds of negligence were put in issue by the answer, and contributory negligence was alleged.

There was little dispute as to the essential facts. The plaintiff had been a hand worker at trunkmaking in Austria, and came to Milwaukee in 1903, and worked first at a tannery, then at a cement block factory, then as carpenter's helper, and then obtained employment at the defendant's factory on the morning of the accident. He was sent at once to operate a machine for embossing leather. This machine is about five feet high and nearly or quite three feet in width. The die faces downward and is stationary. The sheet of leather to be pressed is placed on a large platen or ram plate about two and one-fourth inches below the die, which by the application of steam power is caused to rise up and press the leather against the die. The power is applied by means of a clutch, and the clutch is controlled by a hand lever at the right-hand side of the machine as the operator stands in front of it. To start the machine the operator pulls this lever towards him to the left. This

causes the clutch to operate upon a gear wheel, to which is attached an irregular and heavy cam of three-cornered shape. As the projecting portion of this irregular cam turns upward, a cam roller above it is also forced upward, and this in turn, through a lever and link, moves the ram plate upward against the die. The pressure is thus accomplished by the first half of the revolution of the cam gear. As the last half of the revolution commences, the projecting portion of the cam turns downward, and the cam roller sinks and allows the ram plate to descend to its normal position. If the power is left on, this operation is repeated about every four seconds regularly. In order, however, to stop the press after the operation, the hand lever is thrust to the right and the clutch removed. The proper time to do this is when the ram plate has reached its lowest point, because at this time the heavy, irregular, projecting portion of the cam is also at its lowest point and will not oscillate back and forth, or will only slightly oscillate. If, however, the lever be thrown and the power be taken off just as the ram plate leaves the die, the great weight of the cam will cause it to suddenly drop, and it will oscillate back and forth several times like a pendulum, and in response to this oscillation the ram plate will jump, going back almost or quite to the die the first time, and making two or three more, lesser, jumps. The same effect follows, but in a less degree, if the power be thrown when the ram is half way down. The cam and its mechanism are not visible from the front of the machine. The proper way to operate it is to place the wet leather on the ram plate (which is some two feet square) and then pull the lever, and when the revolution is complete thrust back the lever. When operated in this way there is no second return of the ram plate, and the hand may then be inserted to remove the stamped leather and put in another sheet, when the lever may be again pulled and the operation repeated. When thus operated there is a slight motion or "floating" of the ram plate after it returns to its lowest point and the power is re-

moved, caused by the slight oscillation of the cam which takes place.

An employee named Schrubbe was sent to show the plaintiff how to operate the machine. Leather gussets were being stamped, and Schrubbe operated the machine for half an hour or more, and told the plaintiff to watch and see how he did it. Neither he nor any one else told plaintiff of the effect which would follow if the lever was thrown before the ram plate had fully descended, but Schrubbe undoubtedly always threw it at the right time. After this plaintiff worked successfully for half an hour or so in the forenoon, and in the afternoon continued to work on the machine (no one else being with him, as it was supposed he knew how); and after working an hour or so his hand was crushed by a return motion of the ram plate, while he was reaching in and attempting to remove the leather after it was embossed. Amputation of all the fingers became necessary, except the index finger and thumb.

A special verdict was returned by which the jury found: (1) The plaintiff was injured by getting his left hand crushed between the die and the ram plate; (2) when the power was shut off before the plate had fully descended the plate was liable to go upward of its own momentum so close to the die as to become dangerous to an employee performing the work plaintiff was doing; (3) the defendant, before the accident, knew that such action of the machine was liable to occur and increase the ordinary hazards of operation of the machine; (4) the plaintiff did not know, nor ought he in the exercise of ordinary care to have known, that such action of the machine was liable to occur if the power was shut off before the ram had descended; (5) the defendant knew or ought to have known that plaintiff was unacquainted with such action of the machine and the enhanced hazard thereby resulting; (6) the defendant did not sufficiently instruct the plaintiff so that he should, in the exercise of ordinary care, have known or appreciated the enhanced hazard; (7) the omission to so instruct

was the proximate cause of the injury; and (8) the plaintiff's damages were $6,502. From judgment on the verdict for the plaintiff the defendant appeals.

For the appellant there were briefs by *Boden & Beuscher,* and oral argument by *F. X. Boden.*

For the respondent there was a brief signed by *Kronshage, McGovern & Fritz,* attorneys, and *Arthur F. Belitz,* of counsel, and oral argument by *Mr. O. M. Fritz* and *Mr. Belitz.*

WINSLOW, C. J. Very many errors are assigned, but only those deemed material will be discussed, and some of them only in a general way.

The plaintiff's complaint charged that the embossing machine was defective, and much expert evidence was introduced tending to show that there were appliances which could be attached to such a machine which would prevent the oscillation of the cam when the power was thrown off before the cam had fully descended. At the close of the plaintiff's case, however, the trial court held that there was really no defect in the machine; that it was constructed as was intended; that the only ground for a claim of negligence was in the failure to instruct concerning the proper time to throw the power off; and struck out all of the expert testimony concerning the possibility of the attachment of appliances to prevent oscillation of the cam. There was no error in permitting the plaintiff in good faith to attempt to prove that this condition of the machine constituted a defect, and there was certainly no error in striking out the testimony which had been introduced in this attempt and instructing the jury that it was to be disregarded. In fact this was done at the defendant's request.

It was proven absolutely without dispute that the machine in question was a machine liable to make a dangerous motion when the lever was thrown just as the plate was about to descend. If the lever was thrown as the cam reached the bottom of its course there was no danger, and the hand might

freely be inserted (as it had to be) to remove the stamped leather; but if the lever was thrown a second or two earlier, the ram plate would reascend with great force almost or quite to the die.    It is also undisputed that the mechanism of the cam and ram plate is not visible from the front of the machine where plaintiff stood; that the plaintiff was inexperienced with such machines, and that he told the defendant's superin-tendent so before he was set at work; that while he was shown how to operate the machine by practical illustration by another operative, he was never told in words when was the proper time to pull the lever, nor what the result would be if it was pulled at the wrong time, but left to gather these facts from watching the operation.    In addition to these palpably undis-puted facts the court below held, after the close of the plaint-iff's case, that the accident could have happened in no way ex-cept by the plaintiff's prematurely throwing the lever, and our consideration of the evidence leads us to the same result.

So we start with these facts: The plaintiff was inexperi-enced and defendant knew it; he was set at work before a ma-chine in whose operation there was a secret danger of which defendant knew; he did not have actual knowledge of this danger nor was he told of it, but was required to watch the correct operation of the machine by another, and his hand was in fact caught and crushed by reason of this secret danger while he was engaged in a perfectly proper act.    Really the only questions left were whether his instruction was sufficient so that he knew or ought to have known of the secret danger when he prematurely threw off the power, and, if not, whether the defendant ought to have known that he was unacquainted with the secret danger; and finally, whether the failure to in-struct was the proximate cause of the accident.

The first of these questions was answered in the negative by the jury.    They found that he neither knew nor ought to have known of the danger resulting from premature throwing off of the power.    True, the question was double, and if answered

in the affirmative might be subject to criticism; but being answered in the negative, every juryman must have found, both that he did not know and that he ought not to have known, before it could be so answered. This covered the whole question of contributory negligence. It was the plaintiff's duty to put his hand under the die and remove the leather after the ram plate had descended. Consequently his hand was there in the course of his duty, and under no circumstances would it have been hurt except for the secret danger, so he could only be negligent because he put his hand there when he either knew, or ought in the exercise of ordinary care to have known, of the danger. Both these facts being negatived, no ground of contributory negligence is left.

The jury also found that the omission to instruct was the proximate cause of the injury, and thus the only material question left (other than the amount of damages) was whether the defendant ought to have known that plaintiff was ignorant of the secret danger and the enhanced hazard resulting therefrom. The question, as put to the jury, was, "Did the defendant know, or ought it in the exercise of ordinary care to have known," etc., and was answered "Yes." The form of the question is erroneous under the rule laid down in a number of cases. *Lowe v. Ring,* 123 Wis. 370, 101 N. W. 698; *Du Cate v. Brighton,* 133 Wis. 628, 114 N. W. 103; *Odegard v. North Wis. L. Co.* 130 Wis. 659, 110 N. W. 809. While this is true, it does not necessarily follow that the judgment must be reversed. It must affirmatively *appear,* after an examination of the entire record, that the error has affected the substantial rights of the party complaining before there can be a reversal. Sec. 3072m, Stats. (Laws of 1909, ch. 192). Does it so appear? We think not. There was absolutely no testimony in the case showing that defendant had positive knowledge of plaintiff's ignorance of the danger. The only question was whether the defendant *ought* to have known of such ignorance from the facts before it. The jury, as sensible

men, must have considered simply this latter question, which was the only question upon which there was any evidence. It was not a case like *Du Cate v. Brighton,* where there was evidence from which the jury might have found either fact. There being only one branch of the question upon which there was any evidence or claim of evidence to justify an affirmative answer, we are inclined to hold that it does not affirmatively appear that the form of the question has in any way affected the defendant's substantial right.

We reach this conclusion more readily because the jury had already found, in answer to the next preceding question, that the facts were not sufficient to charge the plaintiff, in the exercise of ordinary care, with knowledge of the danger resulting from premature throwing of the lever. Now the defendant knew what the facts were, and if they were not sufficient to charge the plaintiff with knowledge, it seems that the defendant ought to be charged with knowledge of that insufficiency, and the more so as the defendant had actual knowledge that the plaintiff had never worked on such a machine.

A large number of questions were proposed by the defendant as proper to be inserted in the special verdict, but they were refused, and exception has been taken to each refusal; but, as the special verdict submitted by the court covered the issues as fully as necessary, there is no error in such refusals. We have found no errors either in the charge or in the refusals to charge. The case seems to have been impartially tried and fairly submitted to the jury, and the error in the form of the question before noted is not thought to have impaired any substantial right under the circumstances here present.

The plaintiff before action served a written notice of injury on the defendant, under subd. 5, sec. 4222, Stats. (1898), in which he fixed his damages at $5,000. As the action was commenced and the complaint served within one year after the injury the plaintiff did not introduce the notice in evidence. The defendant, however, offered it in evidence and it was

ruled out as immaterial and irrelevant. There is but one question upon which the notice can be considered material, and that is the question as to the amount of damages. He sued for $7,200 damages. The notice shows that just about one month earlier he had fixed his damages at $5,000. This was in the nature of an admission quite deliberately made, and admissible on the question of the amount of his damages, and the opinion of the court (in which the writer does not share) is that the amount of damages allowed by the jury is excessive, and that the judgment should be modified so as to place the damages at the amount fixed by plaintiff himself in his notice.

*By the Court.*—Judgment modified by reducing the same as of its date to $5,000, and as so modified affirmed; appellant to recover costs in this court.