KORN, Respondent, vs. PFISTER & VOGEL LEATHER COMPANY, Appellant.

*November 17—December 5, 1911.*

*Master and servant: Unsafe working place: Unguarded lever for starting machinery: Evidence: Sufficiency: Opinions: Qualifications of expert: Special verdict: Definiteness: Duplicity: Appeal: Harmless errors.*

1. A revolving drum was used for preparing hides in defendant's tannery, the power being applied or thrown off by means of a shifting lever which was about six feet above the floor and extended eighteen to twenty-four inches into a narrow passageway along which, under the lever, loads of hides were moved on trucks. The lever was sensitive and easily moved by objects coming in contact with it, and was unguarded. While plaintiff was engaged in removing hides from the drum it was started by a truck load of hides coming in contact with the lever, and plaintiff, whose head and arms were at the time in the drum, was injured. *Held,* upon the evidence, that the jury were warranted in finding that the location of the lever, in view of the

width of the passageway and the height of the loads customarily carried on the trucks, rendered plaintiff's working place unsafe.

2. A machinist of fifteen years' experience, familiar with the manner in which shifting levers of this kind are customarily placed in other manufacturing plants when the machinery to be started or stopped adjoins a passageway like the one in question, was competent, although he had never worked in a tannery, to testify as an expert that the lever in question could be guarded, without affecting the operation of the machine, so as to protect it from being moved otherwise than by the operator.

3. It was error to permit an expert to state his opinion that without a guard for the lever the machinery in question was in a dangerous condition, but upon the facts shown in this case the error could not have been prejudicial.

4. A question in the special verdict, as to whether the shifting lever was "*constructed* in a reasonably safe manner, considering the nature of the place where used and the nature of the work required," must have been understood by the jury as referring to the location or placing of the lever with reference to the passageway; and they could not have been misled by the use of the word "constructed" rather than "located."

5. The only litigated issue as to defendant's negligence being as to whether plaintiff's working place was unsafe by reason of the location of the shifting lever, and the jury having found that it was unsafe, an affirmative answer to the question, "Was the defendant guilty of any want of ordinary care which was the proximate cause of plaintiff's injuries?" was a sufficiently specific finding of negligence, in the absence of any request for a more specific finding; and under such circumstances there was no prejudicial error in the question as being double.

APPEAL from a judgment of the circuit court for Milwaukee county: F. C. ESCHWEILER, Circuit Judge. *Affirmed.*

This action was brought to recover damages for personal injuries. The negligence charged in the complaint is substantially that the defendant failed to furnish a reasonably safe place or suitable and safe appliances, and failed to warn plaintiff of the dangers incident to his employment; to keep the lever shifter properly and safely inclosed and protected; to maintain such shifter at a sufficient height from the floor

to prevent persons and objects coming in contact with it and thereby setting the machine in motion; to keep the belt shifter in safe condition as to repair, to reasonably inspect it, and repair defects discovered by inspection; also that the defendant negligently loaded hides upon a truck so high that such hides would come in contact with the shifter when the load was moved along the passageway.

The answer is substantially a general denial. At the close of plaintiff's evidence motion for a nonsuit was denied. The defendant declined to offer any evidence and asked that a verdict be directed for defendant, which was denied. The case was submitted to the jury and the following verdict returned:

"(1) Was the plaintiff injured July 26, 1909, by the starting of the drum or wheel in defendant's shop? *A.* (by the court). Yes.

"(2) Was the shifting device or lever which started the drum or wheel at the time of the injury to plaintiff constructed in a reasonably safe manner considering the nature of the place where used and the nature of the work required? *A.* No.

"(3) At the time of the injury to plaintiff, did defendant furnish plaintiff with a reasonably safe place to work? *A.* No.

"(4) If you answer question No. 3 'No,' then answer this question: Ought the plaintiff, in the exercise of ordinary care, to have known that the place at which he worked at the time of the injury was not reasonably safe? *A.* No.

"(5) Was the defendant guilty of a want of ordinary care which was the proximate cause of plaintiff's injuries? *A.* Yes.

"(6) Was the plaintiff guilty of any want of ordinary care which proximately contributed to produce his injuries? *A.* No.

"(7) If the court should be of the opinion that the plaintiff is entitled to recover, at what sum do you assess plaintiff's damages? *A.* $3,750."

The usual motions were made after verdict. Defendant's motions were denied and judgment ordered for plaintiff on

the verdict. Judgment was rendered for plaintiff, from which this appeal was taken.

For the appellant there was a brief by *Doe & Ballhorn,* and oral argument by *J. B. Doe.*

For the respondent there was a brief by *Rubin & Lehr,* attorneys, and *W. B. Rubin,* of counsel, and oral argument by *W. B. Rubin* and *Max Schoetz, Jr.*

KERWIN, J. At the time of the injury in question the plaintiff was at work on the fifth floor of defendant's tannery. On this floor and extending north and south was a shaft upon which were hung three drums used for preparing hides. The drum at which the plaintiff was at work was about eight feet in diameter and four feet wide and farthest south on the shaft, being some eight or ten feet from the elevator, which was situate at the south end of a passageway extending north and south along the west side of the drums. The drum in question was inclosed except a doorway on the side of it 22 x 24 inches, which was opened when hides were put in and taken out. When the drum was filled with hides the door was closed and the drum caused to revolve on the shaft by means of power applied. The power was put on by means of a clutch to which a shifting lever was attached, and the lever so moved as to engage the clutch and thus apply the power so as to cause the drum to revolve, and, when necessary, by means of the shifting lever the clutch was disengaged and the drum stopped so the hides could be taken out after they had been put through the necessary process. The plaintiff was injured by the starting of the drum at which he was working, caused by a truck load of hides coming in contact with the shifting lever and so moving it as to start the drum revolving while plaintiff was taking hides from it, with his head and upper part of his body in the drum. The principal duties of the plaintiff were to put hides into and take them out of the drum. When the drum was nearly empty and in taking out

the last hides he had to insert his head and the upper part of his body through the door of the drum, and was in such position when injured.    There is evidence that he knew nothing about the operation of the lever, and could not see it when engaged in taking out hides, his head and arms being in the drum, and that he never operated it.    The evidence further tends to show that the shifting lever was about six feet above the floor, about two and one-half feet from the drum, and extended out into the passageway from one and one-half to two feet; that the passageway between the drum and the west wall was partially occupied on the west side by barrels and hides, so that the truck used for hauling hides along the passageway would pass under the lever, which extended out over the passageway; that the truck was used to move hides along this passageway and was about forty-two inches wide, loaded about six feet high, the load weighing about 2,200 pounds, and was moved by three men, one in front and two pushing behind; that the injury was caused by moving the truck along the passageway under the lever so that the top of the load came in contact with the lever and so shifted it as to engage the clutch and start the drum.    The evidence further tends to show that the lever shifter was unguarded, and that it was easy and practicable to guard it so that the truck could not come in contact with it while being operated along the passageway. The passageway was much used, and the lever shifter was sensitive and easily moved by any object coming in contact with it so as to engage the clutch and start the drum, or disengage the clutch and stop it.

1. Error is assigned upon the admission of evidence of one Aldrich.    (1) Because the witness was not shown to be competent to testify as an expert, and (2) because the matter upon which the witness was interrogated was not a proper subject of expert testimony.

We think the witness qualified as an expert.    He testified that he was a machinist of fifteen years' experience and was

familiar with the manner in which shifting levers of the kind in question are usually and customarily placed for starting and stopping machinery when such machinery adjoins a passageway or alley like the one in question; that he had worked in various breweries repairing machinery and for Allis-Chalmers Company and others and for the Illinois Steel Company as a tool maker and repairer of machinery, but did not testify that he had ever worked in a tannery. The fact that he had had no experience in tanneries is not significant. The principles involved regarding the proper construction and placing of shifting levers in other manufacturing plants near passageways is obviously the same as in tanneries.

Objection was also made to the admission of evidence of the expert to the effect that the shifting lever could be guarded, without affecting the operation of the machine, so as to protect it from being moved otherwise than by the operator. We find no error in the admission of this evidence. But the witness was permitted to answer, over defendant's objection: "In my opinion, without the safeguard of which I have spoken the machinery was in a dangerous condition." We think the admission of the foregoing was error as invading the province of the jury. We cannot think, however, that the admission of it was prejudicial. There was no claim that the lever was dangerous unless it extended into the passageway, and if it did so extend as to come in contact with the passing truck its dangerous location was a matter of common knowledge, and the answer of the witness could, we think, have worked no prejudice; and under our statutes and decisions we must hold the admission of it nonprejudicial.

2. Error is assigned in denying motions for nonsuit and directed verdict. These assignments involve mainly the sufficiency of the evidence on the question of safe working place. There is ample evidence to warrant the jury in finding that the location of the lever, extending into the passageway from eighteen inches to two feet, in view of the width of the pas-

sageway, the height of the loads customarily carried upon the trucks, and the distance from the lever to the floor, rendered the place unsafe.

3. Error is assigned on the submission, over defendant's objection, of the second question of the special verdict. Particular objection is made to the use of the word "constructed," and it is argued that the word "located" should have been used, and that there is no issue on construction in the case. We think the jury could not have been misled by the word complained of. It must have been obvious to them that the question was as to location or placing of the lever with reference to the passageway. We think no error was committed in the submission of the second question of the special verdict. *Fonder v. General C. Co.* 146 Wis. 1, 130 N. W. 884; *Palmer v. Schultz,* 138 Wis. 455, 120 N. W. 348.

Objection is also made to the fifth question of the special verdict on the ground that it is double, and that there is no specific negligence found. On the latter point counsel relies on *Lillis v. Beaver Dam W. Mills,* 142 Wis. 128, 124 N. W. 1011, but in that case it will be observed that it did not appear from the record upon what ground of negligence the case was submitted to the jury, while in the case at bar the issue of negligence, whether the shifting lever was constructed in a reasonably safe manner, was found by the jury, and this was the only litigated question on the issue of reasonably safe place. We think negligence was sufficiently found, and no request was made for specific findings. *Maxwell v. Wellington,* 138 Wis. 607, 120 N. W. 505; *Steber v. C. & N. W. R. Co.* 139 Wis. 10, 120 N. W. 502; *Halwas v. American G. Co.* 141 Wis. 127, 123 N. W. 789; *Winkler v. Power & M. M. Co.* 141 Wis. 244, 124 N. W. 273; *Fonder v. General C. Co.* 146 Wis. 1, 130 N. W. 884; *Wawrzyniakowski v. Hoffman & B. Mfg. Co.* 146 Wis. 153, 131 N. W. 429. There was no prejudicial error in the question as being double. *Berger*

*v. Abel & B. Co.* 141 Wis. 321, 124 N. W. 410; *Anderson v. Sparks,* 142 Wis. 398, 125 N. W. 925; *Fidelity T. Co. v. Wis. I. & W. Works,* 145 Wis. 385, 129 N. W. 615.

We find no prejudicial error in the record.

*By the Court.*—The judgment is affirmed.