Hoar, Respondent, vs. Rasmusen, Appellant.

*November 11—December 6, 1938.*

For the appellant there was a brief by *W. H. Stafford* and *Harold E. Stafford,* both of Chippewa Falls, and oral argument by *Harold E. Stafford.*

For the respondent there was a brief by *Douglas & Omernik* of Spooner, and oral argument by *Glenn R. Douglas.*

FAIRCHILD, J. The doctor who wrote the prescription knew that Hoar was allergic to mercury. He directed the use of "Calamine Lotion c Phenol (1%)." The druggist who undertook to fill this prescription used a commercial

compound known as cala-zinc lotion, containing a slight amount of mercury. This was similar to but not exactly the same as the formula for calamine lotion with phenol in the National Formulary, a reference book ordinarily consulted by pharmacists when filling prescriptions. The latter formula contains no mercury.

There were two applications of the lotion, the first on November 9, 1936. The result not being satisfactory, the patient consulted his family physician, Dr. Hering, who telephoned to the druggist and inquired whether there was mercury in the lotion. Upon being assured that there was not, the doctor assumed that the application had not been thorough and advised further use of the medicine. Within a short time the druggist got word to Dr. Hering that mercury was an ingredient, but in the meantime there had been a liberal application. The lotion was removed as speedily as possible, but serious illness followed.

The plaintiff elected a cause of action in tort rather than on contract. Although the facts concerning the doctor's inquiry and the druggist's false answer were fully brought out in the testimony, there was no indication either in the instructions or in the special verdict that the jury might find the druggist negligent in failing to correct his first mistake when he had the opportunity. In the third answer of the special verdict the jury found that Rasmusen could not foresee that injury might result from his carelessness in filling the prescription. In granting a new trial the court said in reference to that answer:

"Assuming that such answer is a proper one where only the filling of the prescription is taken into consideration, I think a different situation may well arise when it is considered that Dr. Hering made specific inquiry of the defendant as to the presence of mercury in the preparation. I think the jury would at least be warranted in concluding that after this inquiry had been made, the defendant should have then realized that it was important whether or not there was

mercury in the preparation, and I think this matter should have been submitted to the jury, either by way of question or appropriate instruction, neither of which was done."

What the circuit court said fully justifies the order for a new trial. It is clear that the druggist misrepresented a fact when he delivered to Mrs. Hoar a proprietary compound containing mercury instead of calamine with phenol as described in the National Formulary. There was ample medical testimony to the effect that druggists are ordinarily expected to fill prescriptions according to the National Formulary or the United States Pharmacopœia, unless the contrary is indicated. See sec. 97.25 (2), Stats.

There was some testimony that variations from the standard formula were allowed by local custom, but it is clear that if such a custom could ever be an excuse, it was not in the present case, because the prescription came from a distant hospital where the prescribing doctor could not be expected to know of any such custom. Mrs. Hoar relied upon the druggist's unspoken representation that the medicine was exactly what the Madison doctor had ordered. Later, when the druggist repeated the representation in a different form by telling the doctor that there was no mercury in the medicine, Mrs. Hoar as agent for her husband again relied upon the truth of the druggist's representation.

One who makes a misrepresentation of fact or law is subject to liability to another for bodily harm which results from an act done by the other or by a third person in reliance upon the truth of the representation, if the one who misrepresents the fact knows that his statement is false and intends to induce or should realize that he may induce action by the other or by a third person which involves an unreasonable risk of bodily harm. Restatement, Torts, § 310. Where an act is one which a reasonable man would recognize as involving a risk of harm to another, the risk is unreasonable and the act is negligent if the risk is of such magnitude as to

outweigh what the law regards as the utility of the act. Restatement, Torts, § 291.

Although the druggist may have had reason to suppose that the medicine which he supplied was just as good as what the doctor prescribed, it must be held that the risk of harm from the act of making the substitution without informing the purchaser outweighs any possible utility that the act may have had. It is even more apparent that an unreasonable risk was involved in misinforming the physician. The druggist could easily have refused to answer at all if he believed that to be his duty. Either of the druggist's acts, therefore, constituted an actionable misrepresentation.

The circumstances of a pharmacist's or druggist's calling demand the exercise of a high degree of care and skill, such care and skill as an ordinarily prudent person would exercise under those circumstances, the highest degree of care and prudence consistent with the reasonable conduct of the business. The effect of a mistake may be swift and disastrous. There are many cases in which druggists have been held liable for injuries resulting from negligence in filling a prescription or supplying a remedy. *Kennedy v. Plank* (1904), 120 Wis. 197, 97 N. W. 895; *Tremblay v. Kimball* (1910), 107 Me. 53, 77 Atl. 405; *Brown v. Marshall* (1882), 47 Mich. 576, 11 N. W. 392; 29 L. R. A. (N. S.) 900; 31 A. L. R. 1336. In the present case the liability is more apparent than in most, because the substitution was deliberately made under the mistaken impression that the prescription could be changed in accordance with the druggist's judgment.

There is no motion to review the ruling of the trial court in declining to enter judgment in favor of the plaintiff notwithstanding the verdict. The plaintiff having elected to abide by the order granting a new trial, that order must be affirmed.

*By the Court.*—Order affirmed, and cause remanded for further proceedings according to law.