VLASAK and wife, Appellants, vs. GIFFORD, Respondent.

*January 8—February 15, 1946.*

330

For the appellants there was a brief by *Potter & Smith* of Racine, and oral argument by *L. D. Potter*.

For the respondent there was a brief by *Thompson, Monk & Thompson,* attorneys, and *Vilas H. Whaley* of counsel, all of Racine, and oral argument by *Floyd D. Monk*.

WICKHEM, J.    The principal contention upon this appeal is that the court erred in denying plaintiffs' motion for a new trial because of a substantial defect in the verdict.    Question No. 1 is claimed by plaintiffs to have been duplicitous and multiple, rendering it impossible to know what the jury's finding was, and raising a strong probability that the jury misunderstood the issue presented.

Briefly, plaintiffs contend that they never pleaded negligence in starting the fire that destroyed plaintiffs' orchard, and that the only issue was negligent mismangement of the fire.    Under these circumstances, plaintiffs contend that, since question No. 1 is put in the conjunctive and the jury required to find that defendant was negligent both in starting and managing the fire, the jury could not well have answered the question in the affirmative.

Defendant replies that since there was no allegation that the fire was negligently started there was no issue as to that, and the inclusion of the word "starting" in the question did not combine two contested issues with resulting duplicity and could not have misled the jury. Plaintiffs also claim that the trial court should have held as a matter of law that there was negligence in managing the fire. This is countered by defendant's claim that there was no evidence of negligence, and that a verdict should have been directed.

The fire occurred on December 31, 1943. The weather was mild and quite dry. About 1:30 o'clock in the afternoon defendant set a fire in the grass adjoining the roadway, a few feet south of the south line of plaintiffs' orchard and near the southwest corner thereof. This fire got out of his control, burned through the orchard in a diagonal line from southwest to northeast, destroying about five hundred sixty-eight fruit trees of various varieties. At the time the fire was started, the wind was blowing from the southwest toward the orchard. The ground constituting the orchard was covered with a thick covering of dry grass and weeds. Considerable grass about three feet in height was standing in the rows. All this grass was extremely dry. Defendant started a fire at the southwest corner of plaintiffs' orchard, and backfired the grass to the south for about three rods to eliminate danger and help control the fire. His equipment was a pail of water and a broom. He then started to put the fire out and, as he supposed, had it out. He then walked south about twenty rods and when he got there he looked up and thought he saw smoke. He walked back to the spot where he had originally started the fire and there was a little blaze. He started to put this fire out and nearly had it out when it started to go along the fence line. He started to go through the fence, was caught on barbed wire and was held up for a few seconds. During this short period, the fire got into the grass in the tree row. He put that fire out, but while he was doing so the fire went to another spot. He

debated whether he should call some men who were working in a field near by, but by the time he had made up his mind to call them they had arrived on the scene. The five men from the adjoining field, working with defendant, were unable to control the fire, and it burned through the orchard and caused the damage now sued for.

The fire was started, according to defendant, on recommendations of the department of agriculture as a means of controlling the corn borer. It is not questioned that defendant took certain precautions as to starting and managing the fire. The conclusion is inescapable that there was a jury question as to the adequacy of these precautions. It was obviously dangerous to go away and leave a fire so close to plaintiffs' orchard with its thick underlay of weeds and grass. While defendant thought he had put the fire out, he obviously had not done so, and the jury was entitled to believe that he should have been able to ascertain whether he had the fire out and that he should not have left the spot until the situation was safe. The quickness with which the fire got out of his control, although he was a matter of only twenty or thirty rods away from it, strongly warrants the inference that there must have been observable fire left at the time when he supposed that he had it out. Negligence in starting the fire was not pleaded. Had it been pleaded, we are of the view that there would have been a jury question whether, under all the circumstances, it was negligent to start the fire at the time and in the place, and with the equipment for control at hand. Indeed, the starting and management of this fire are issues that are not easily separated, and the foregoing sentence could with some force be argued to relate to management. A careful review of the record persuades us that had negligence in starting the fire been pleaded, and a separate question submitted to the jury on the point, this court could not have set aside an affirmative answer to the question. So far as we can discover from the record, there were no instructions to the jury to the effect that

negligence in starting the fire was not in issue, and the jury might well have been misled into supposing that the answer to the question must be "No" if in their judgment there was no negligence in starting the fire, a sustainable but not a necessary conclusion upon the record.

The subject of duplicitous questions and fatally defective verdicts based on answers to such questions has frequently received the attention of this court. If a question in a special verdict is so drafted as to present to the jury more than one question, and it is impossible to determine whether some of the jury did not answer one question and some another, the verdict is fatally defective. The defect in the question is formal but the defect in the verdict is one of substance and the verdict is void. If no objection is taken to the form of the verdict, and the answer of the jury is such as to raise no ambiguities as to the extent of the finding, the verdict is valid and the formal defect is waived by failure to object. It is necessary to make a distinction between the form of the question and the validity of the verdict because the ultimate fate of the verdict depends upon the answer given to the question. For example, when the special question puts more than one question conjunctively, and the jury's answer is in the negative, the verdict is fatally defective because it is impossible to know whether all the jury found in the negative as to each of the questions included in the submitted question. Where the special question contains several questions disjunctively put, and the jury's answer is "Yes" the same result follows. It is impossible to determine what the jury has found as to any one of the questions duplicitously included in the special question. In connection with this see *Berger v. Abel & Bach Co*. 141 Wis. 321, 124 N. W. 410. Thus, it will be seen that when no objection is made to the form of the question, the person failing to make such objection takes the risk that the duplicitous question will be so answered as to leave nothing but a formal defect which he has waived by not objecting. If, however, the

answer of the jury is such as to make it impossible to know what they have found, the verdict is fatally and substantially defective. In connection with this, see *Martin v. Ebert,* 245 Wis. 341, 13 N. W. (2d) 907. In the foregoing it is implied that the several questions, inclusion of which in a single question makes the latter duplicitous, and which may render the verdict void, are matters concerning which there is an issue of fact, and in several cases, notably *John Hoffmann & Sons Co. v. Parks,* 175 Wis. 303, 307, 184 N. W. 1035, and *Berger v. Abel & Bach Co., supra,* where there was no evidence in the record from which a jury could answer the questions in such a way as to render the verdict ambiguous, the duplicity was held not to invalidate the verdict, and the form of submission not to constitute prejudicial error, at least unless there had been an objection to the form of the question. In the *Hoffmann Case, supra,* the court said:

"In view of the issues which were tried and the whole course of the trial, we consider that the form of the verdict did not mislead the jury and that there was no testimony from which they could have inferred that some of the payments applied upon the note were included in the agreement and that others were not, and we have come to the conclusion that no injustice was done by the submission of the verdict in the form it was left to the jury. . . .

"Moreover, it does not appear that any exception was taken to the form of the verdict or that the attention of the court was called to it until after the trial or that any other form of question was proposed by defendant's counsel. If the verdict was objectionable in form, counsel should have objected and entered due exception to the refusal of the court to correct it."

In this case negligence in starting the fire was not in issue under the pleadings, but there was a jury question whether the fire was negligently started and nothing in the instructions from which the jury would understand that that question was not a matter of controversy. In view of this, we are persuaded

that the jury was probably misled into thinking that they had two issues to resolve and must agree to an affirmative answer to both or else answer the question "No."

Upon the record it would seem that the verdict is void under the doctrine of cases heretofore cited. We do not find it necessary to rest the case on this point, however, because we are satisfied that there is a strong probability that the jury was misled, and we entertain such misgivings whether justice has not miscarried that we have concluded to exercise our discretionary power to reverse the judgment and remand the case for a new trial.

Other matters assigned as error do not, in view of this disposition of the case, call for discussion in this opinion.

*By the Court.*—Judgment reversed, and cause remanded with directions to grant a new trial.