BRODDE and another, Appellants, v. GROSENICK and another, Respondents.

*September 7—October 3, 1961.*

For the appellants there were briefs by *Robert W. Wolfe* and *Wolfe, O'Leary & Kenney,* attorneys, and *Edwin W. Knappe* of counsel, all of Milwaukee, and oral argument by *Mr. Robert W. Wolfe* and *Mr. Knappe.*

For the respondents there was a brief and oral argument by *Joseph P. Meyeroff* and *Nathaniel D. Rothstein,* both of Milwaukee.

HALLOWS, J.   Three issues are raised: (1) Whether the owner and operator of the tavern failed to provide and maintain a spark arrester as required by the Milwaukee city ordinance; (2) should the defendant Gilbert E. Grosenick, the tavern operator, have known that to burn refuse and paper in the incinerator under the conditions then existing would create an unreasonable risk of fire to nearby dwell-

ings; and (3) after starting the fire in the incinerator, did the tavern operator make an adequate and efficient inspection of the chimney for spark emission?

It is not seriously disputed, and the trial court found, that sparks which emanated from the defendant's incinerator chimney set fire to the plaintiffs' dwelling, causing damage in the stipulated amount of $6,740.31. Defendant's tavern, located on West Center street in the city of Milwaukee just east of Eighteenth street, had an incinerator in the basement attached to a chimney, which was capped by a spark arrester. The top of the chimney was about 25 feet from the ground. Plaintiffs were owners of a two and one-half story dwelling on Eighteenth street and to the north of the tavern. The distance from the chimney to the plaintiffs' dwelling was about 40 feet, there being another dwelling in between. The neighborhood is an old section of Milwaukee containing frame houses with wooden roofs, as plaintiffs', and some commercial buildings, like the defendant's.

On Sunday morning, September 6, 1959, between 10:30 and 11 o'clock, the defendant's porter started to burn a garbage can and one half of the Saturday night's refuse and debris in the incinerator. At that time, the wind from the southwest was 15 to 16 miles an hour, blowing from the chimney toward the east end of plaintiffs' dwelling. The temperature was about 80 degrees.

About a year before the fire, upon order of the fire department, the defendant had replaced the spark arrester on his chimney and it had been inspected from the ground by a member of the fire department and approved. There was testimony some of the neighbors had on days previous to the fire noticed soot and cinders emanating from the chimney and had called the tavern. On the morning of the fire, one neighbor, whose wash was getting dirty from flying soot and ashes, called the tavern and later, when she discovered the plaintiffs' house burning, notified the fire department. The

defendant and his employees denied ever receiving any complaints. The fire department had no record of having received any complaints. There was testimony the mesh of the spark arrester was one-half inch in size and it was the rule or practice of the fire department to approve such size mesh unless complaints were received and if complaints were made a smaller mesh would be required. There was no credible evidence that the incinerator was not properly maintained.

Plaintiffs strenuously contend that the defendants were negligent as a matter of law because the spark arrester did not comply with sec. 47–6 of the Milwaukee ordinance which they claim was a safety ordinance having the same force and effect as a safety statute. This ordinance provides:

"The owner of any chimney or smokestack used in connection with heating or power boilers or furnaces, or for burning of waste or refuse, from which there is emitted sparks or burning embers shall provide on such chimney or stack an approved arrester, screen, or other device that will prevent such emission."

The construction of this ordinance is required in the determination of the first issue. Plaintiffs contend two conditions must be met: (1) The arrester must be approved, and (2) that it will prevent all emission of sparks or burning embers.

The defendants take the position: (1) That the arrester was approved by the fire department whose duty it was to enforce the statute, and (2) that the statute only requires an arrester which will impede, check, or reduce the emission of sparks, and an arrester which would totally prevent sparks from escaping would affect the proper functioning of the incinerator.

It has been stated in several cases that a spark arrester has not yet been manufactured that will totally eliminate sparks and burning embers. A spark arrester which would

totally eliminate sparks would affect the efficiency of the incinerator, and the size of the mesh must bear a relationship to the size of the furnace, height of the chimney, and other factors. *Menominee River Sash & Door Co. v. Milwaukee & Northern R. Co.* (1895), 91 Wis. 447, 65 N. W. 176; *Atkinson v. Goodrich Transportation Co.* (1884), 60 Wis. 141, 18 N. W. 764; *Oregon Box & Mfg. Co. v. Jones Lumber Co.* (1926), 117 Or. 411, 244 Pac. 313; *Mt. Emily Timber Co. v. Oregon-Washington R. & Navigation Co.* (1916), 82 Or. 185, 161 Pac. 398; *St. Louis v. Heitzeberg Packing Co.* (1897), 141 Mo. 375, 42 S. W. 954. While these cases are old and spark arresters, no doubt, have since been improved, the testimony in this case is to the effect a spark arrester, as its name implies, will arrest sparks but will not wholly prevent them. We cannot hold, in view of the evidence and of the nature and purpose of spark arresters, the ordinance was intended to require the impossible. Such a requirement would be unreasonable and render the ordinance void. The ordinance must be given a practical and reasonable construction.

True, the word "prevent" is sometimes used to mean totally stop or totally eliminate, but in the context of this ordinance it must be construed to mean "to hinder, to check, or to retard." Because of the use of the word "approved" in the ordinance, we cannot find an intent expressed that an owner of a building must at his peril determine the type and size of the screening. The approval of the type and efficiency of an arrester for each particular chimney was left to the fire department which is better qualified to apply the standard to a particular chimney than a lay person. It may be true in this case, as argued by the plaintiffs, that a spark arrester having a smaller screening should have been required by the fire department, but it is not a breach of the ordinance for the defendants to have relied on the fire department's approval. The trial court, therefore, was cor-

rect in granting a nonsuit against the plaintiffs on this issue. The plaintiffs' proof at that time consisted only of the fact sparks were emitted from the chimney and set fire to the plaintiffs' house. This proof might have been sufficient if the plaintiffs were correct in their interpretation of the ordinance because a breach of a safety ordinance would be negligence *per se.*

The burden of proof was on the plaintiffs to prove noncompliance with the ordinance. The case of *Bonnell v. Chicago, St. P., M. & O. R. Co.* (1914), 158 Wis. 153, 147 N. W. 1046, relied on by the plaintiffs, involving spark arresters on locomotives and placing the burden of proof of compliance upon the owner or operator thereof, is not applicable and has not been extended to dwellings and commercial establishments. The construction of arresters on locomotives is peculiarly within the knowledge of the railroad company and the average person cannot obtain information concerning their construction. The reason for the rule, as applied to movable locomotives with their forced-draft system and chimneys relatively close to the ground, does not apply to arresters on stationary chimneys, which in most cases are higher and farther away from inflammable or burnable objects and whose nature is commonly known. See *Spaulding v. Chicago & N. W. R. Co.* (1872), 30 Wis. 110, and (1873), 33 Wis. 582.

On the second issue, the trial court in its opinion stated, "The evidence of complaints to defendant is too indefinite and sketchy to establish the fact that Gilbert knew or should have known that to fire the incinerator would create an unreasonable risk of harm. Had proper complaint been made to the fire department, such notice could have been established effectively." The trial court found the fire was not caused by any negligent act on the part of the defendants and on September 6, 1959, and prior thereto, the defendant did not know nor should he have known that to fire the inciner-

ator would create an unreasonable risk of harm to the adjoining property owners or others. This finding is based, in part, on a conclusion designated a finding that no proper complaint had been made to the fire department by the plaintiffs or their neighbors, placing the defendant Gilbert E. Grosenick on notice that to fire the incinerator would create an unreasonable risk of harm. Implicitly, this means the defendant needs actual notice that the spark arrester is emitting sparks before he is negligent in the operation of the incinerator. The failure to prove notice does not necessarily prove the defendant operator was not negligent or that he should not have known that to fire the incinerator would create an unreasonable risk of harm to the adjoining property owners. Since a spark arrester does not totally eliminate sparks, as claimed by the defendant, he must be chargeable with such knowledge and that sparks can start fires under some circumstances.

Generally, one who uses fire for a legal and legitimate purpose with proper safeguards and without negligence is not liable for damages caused by its escape; otherwise, he would be an insurer against accidents. Likewise, the fact, that a fire damaging property was caused by a spark from a smokestack of a nearby plant or dwelling, is not alone sufficient to establish negligence. However, the operator or the one in control of the fire is under the duty of exercising ordinary care in the construction, maintenance, and operation of his premises to prevent injury to the adjoining property. *Day v. H. C. Akeley Lumber Co.* (1893), 54 Minn. 522, 56 N. W. 243; *American Ice Co. v. South Gardiner Lumber Co.* (1911), 107 Me. 494, 79 Atl. 6. See 22 Am. Jur., Fires, p. 607, sec. 20; 65 C. J. S., Negligence, p. 563, sec. 72; Anno. Fire—Sparks from Industrial Plants, 25 A. L. R. 989. In *Miller v. Neale* (1909), 137 Wis. 426, 428, 119 N. W. 94, the court stated:

"A man may lawfully burn rubbish or brush upon his own land if he exercises that prudence in the starting of the fire and the management of it after it is started which the rules of ordinary care demand. He is using a dangerous agent, and when there is much inflammable material on the ground, and the wind is strong in the direction of his neighbors' lands, he may well be charged with negligence if he sets a fire, or if, having set it, he does not exercise that care to keep it under control which ordinary prudence dictates."

In *Martin v. Bishop* (1884), 59 Wis. 417, 18 N. W. 337, the court held it was gross negligence to start a fire in a steam engine, used to furnish power to a threshing machine, 65 feet on the windward side from grain stacks in hot, dry weather with a high wind blowing.

The question is whether this defendant, although not having notice from neighbors that his incinerator, in fact, emitted sparks, ought to have known that to fire the incinerator in the manner he did under all the circumstances then existing would cause an unreasonable risk of harm to others. The defendant is charged with knowledge that the approved spark arrester would not totally eliminate sparks and burning embers from escaping from the chimney. We stated in *Osborne v. Montgomery* (1931), 203 Wis. 223, 242, 234 N. W. 372:

"In determining whether his conduct will subject the interests of another to an unreasonable risk of harm, a person is required to take into account such of the surrounding circumstances as would be taken into account by a reasonably prudent person and possess such knowledge as is possessed by an ordinarily reasonable person and to use such judgment and discretion as is exercised by persons of reasonable intelligence and judgment under the same or similar circumstances."

In *Hoar v. Rasmusen* (1938), 229 Wis. 509, 513, 282 N. W. 652, the court stated:

"Where an act is one which a reasonable man would recognize as involving a risk of harm to another, the risk is unreasonable and the act is negligent if the risk is of such magnitude as to outweigh what the law regards as the utility of the act."

Negligence depends on the circumstances and is a relative term and certainly so in relation to the risk involved and knowledge thereof. The greater the danger is, the greater the care required. The defendant must consider or be chargeable also with knowledge of the surrounding circumstances, including the weather, direction and force of the wind, the inflammable character of the neighborhood buildings, the height of the nearby buildings, and the height and distance of his chimney from such buildings, all of which were in the testimony. *Atkinson v. Goodrich Transportation Co., supra; Cook v. Doud Sons & Co.* (1911), 147 Wis. 271, 133 N. W. 40. See *Vlasak v. Gifford* (1946), 248 Wis. 328, 21 N. W. (2d) 648; Anno. Fire—Liability for Spread, 24 A. L. R. (2d) 241.

The trial court in its opinion did not mention the third issue, namely, whether the porter failed to make an efficient observation. He testified he burned one and one-half garbage cans of debris, refuse, and paper napkins and immediately after starting the fire, he went outside and looked at the chimney and saw only a little smoke coming out. If he looked immediately after starting the fire, it is possible he looked too soon. It was his custom after looking at the chimney to go back and add more inflammable material on the fire. It is a question of fact whether the defendant's employee should have made another observation after the fire became more intense. A situation may suggest to a

reasonable mind that an investigation and inspection ought to be made in order that the dangers may fully appear, and in such a situation a person is under duty to exercise his senses and intelligence to make an effective inspection, 38 Am. Jur., Negligence, p. 667, sec. 24; or be chargeable with all the facts which by proper inquiry he might have ascertained. *Zdunek v. Thomas* (1934), 215 Wis. 11, 254 N. W. 382.

In concluding the plaintiffs failed to sustain their burden of proof to show that the defendant and his servant were negligent because the complaints were too indefinite to establish the defendant should have known that to fire the incinerator would create an unreasonable risk of harm, the trial court was in error on the law and did not fully consider the evidence of the surrounding circumstances, the nature of the spark arrester, and the manner of operating the incinerator, on the question of whether the defendant was negligent. We cannot determine on the record, as a matter of law, that the defendant was or was not negligent and, therefore, we are inclined to exercise our discretionary power under sec. 251.09, Stats., and remand the case for further proceedings. Since the cause of the fire and the amount of damages are not in issue and the trial court was correct in granting the nonsuit, further proceedings should be limited to a consideration of whether the defendant Gilbert E. Grosenick should have known that to operate the incinerator in the manner he did under the surrounding circumstances he was creating an unreasonable risk of harm to another. In determining this issue, the trial court may, in its discretion, make such determination on the present record or take further testimony.

*By the Court.*—Judgment reversed, and the cause remanded for further proceedings in accordance with the opinion.

352

The following memorandum was filed October 19, 1961:

On the court's own motion:

(1) The words "Reversed and remanded" in the first sentence of the opinion after the words "MICHAEL T. SULLIVAN, Circuit Judge," are amended to read:

"Judgment affirmed in part and reversed in part."

(2) The mandate in the above matter is amended to read as follows:

"*By the Court.*—That part of the judgment granting a nonsuit and dismissing the cause of action against Elmer Grosenick and Gilbert E. Grosenick involving the failure to provide an effective spark arrester is affirmed; and that part of the judgment dismissing the action as to Gilbert E. Grosenick on the issue of negligence is reversed and the cause remanded for further proceedings in accordance with this opinion. The respondent Elmer Grosenick shall recover one half of the respondents' costs against the appellants, and the appellants shall recover one half of their costs against Gilbert E. Grosenick. No other costs are to be taxed."