HENRY WOLCHO, ADMINISTRATOR, vs. ARTHUR J. ROSENBLUTH.

Third Judicial District, Bridgeport, October Term, 1908.

BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

The defendant manufactured and sold a liquid mixture called "stove-line," which was labeled for use on "all iron work . . . will stand a high temperature." The plaintiff's intestate used it upon a warm stove, when the mixture, forty per cent. or more of which was benzine, ignited and so severely burned her that she soon died. Upon a hearing in damages after default, in an action for negligence, it was held:—

1. That it was immaterial that the defendant did not intend that the mixture should be used on stoves, if persons of ordinary intelligence who had no knowledge or notice of its dangerous character might reasonably suppose that it was designed and could safely be used for such purpose; and that the conclusion of the trial court, that such a supposition might fairly be drawn from the name of the preparation and the statements on the labels, was fully justified.

2. That the question whether it was dangerous to use the mixture on

a hot stove was one of fact, the determination of which by the trial court, upon conflicting evidence, was final.

3. That the danger of using it as described in the finding was not materially variant from that alleged in the complaint.

4. That the facts as found were not inconsistent with the conclusion of the trial court, to the effect that the defendant had failed to disprove the negligence with which he stood charged, and which his default had, prima facie, admitted.

5. That the facts as found not only did not disclose contributory negligence on the part of the decedent, but were entirely consistent with the trial court's finding that she exercised reasonable care in using the polishing material as she did.

6. That evidence of how the component parts of other mixtures compared to those of stoveline, and whether there was any difference between the directions or warnings on other "stovepipe enamels" and those on stoveline, was properly excluded.

7. That the fact that similar mixtures, dangerous to use on a hot stove, had been generally sold under other names and with different labels, without notice of such danger, did not tend to prove that the defendant was not negligent in selling the compound in question as one which might be safely used upon a hot stove.

A so-called fact is not necessarily "admitted" or "undisputed," within Rule 10, p. 268, of the Practice Book, merely because some witness has testified to it and no witness has directly contradicted it.

Argued October 27th—decided December 18th, 1908.

ACTION to recover damages for negligently causing the death of the plaintiff's intestate, brought to and heard in damages by the Superior Court in New Haven County, *Gager, J.;* facts found and judgment rendered for the plaintiff for $3,000 damages, and appeal by the defendant. *No error.*

*Richard H. Tyner* and *Louis M. Rosenbluth,* for the appellant (defendant).

*William H. Ely* and *Charles C. Ford,* for the appellee (plaintiff).

HALL, J. While the plaintiff's intestate, Lena Wolcho,

was using upon her stove a liquid mixture called "stove-line," prepared and sold by the defendant, it suddenly ignited and set fire to her clothing and she received injuries from which she died.

The complaint alleges that said preparation "contained a large quantity of inflammable material, and when used upon hot substances becomes dangerous to use, in that it is liable to ignite and cause a fierce blaze in the nature of an explosion which it is difficult to control"; and that the defendant negligently sold said article without warning purchasers of its dangerous character.

Concerning the sale of said article by the defendant, its composition and characteristics, and the manner in which the deceased was injured while using it, the trial court has found these facts:—

The liquid preparation called "stoveline" is sold in half pint cans, upon each of which are printed labels and directions of which the following are copies:—

---

(ODORLESS).

## " *STOVELINE* "

*TRADE-MARK.*

**STOVE-PIPE ENAMEL.**

For use on all Iron Work.

ONE-HALF PINT.

---

Wolcho *v.* Rosenbluth.

> ## " STOVELINE " ⬭
> **TRADE-MARK.**
>
> ## STOVE PIPE ENAMEL.
>
> FOR USE ON Stovepipes, Radia-tors, Registers, Grates, Steam and Water Pipes, Locomotives, Iron Fences, Gas Stoves, Boilers, Smoke Stacks, Furnaces, Ventilators, Sewing Machines and all other places where a smooth lasting brilliant black finish is desired.
>
> Prevents Rust.
>
> Will not crack or peel and will stand a high temperature.

> # DIRECTIONS FOR USE
>
> Remove cover by prying under Edge with a nail or blunt instrument. Shake and stir well and apply with bristle brush. Rusty articles should be sandpapered before Enamel is applied. One coat will produce a brilliant black finish.
>
> ## A. J. ROSENBLUTH & CO.,
>
> **NEW HAVEN, CONN., U. S. A.**

It is an artificial composition, composed of benzine, oils and turpentine, and japan, the proportions of which are: benzine, 41.41 per cent.; oils and turpentine, 15.03 per cent.; and japan, 43.56 per cent. The liquid, when brought in contact with a flame or very close to a flame, will ignite and burn freely, though not with a fierce flame or one explosive in its nature. The liquid, independently of the vapor which it may give off, is not explosive. It is less

dangerous than pure benzine. The benzine in the compound will give off fumes according to its temperature and that of the material upon which it is being used, vaporizing more rapidly as the temperature rises. These fumes, mixing with the air, are liable to form a highly and dangerously explosive mixture, which, when brought in contact with a flame, will explode or cause an explosive flame of a great strength and power. By reason of these qualities, due to the presence of benzine in the proportions stated, the compound is "a dangerous substance to use on or about any warm or hot surface, as a stove, where there is, or is liable to be, any flame with which said fumes may come in contact, whether said flame is in said stove or within the possible reach of the mixture of air and benzine fumes which may be formed in the use of said compound."

Prior to said 6th day of March, 1906, the defendant sold to R. and F. H. Kamak, of the city of Derby, who were retail dealers in paints, oils, stove polish, etc., a number of cans of said stoveline, put up and manufactured by him, without notifying them of the dangerous character of it, and without notifying them of the danger arising from the use of it on or about hot stoves or stoves in which there was a fire. The defendant was a chemist and knew the composition of stoveline, and was familiar with the nature and danger of the use of benzine. Since 1903 he had sold 15,000 cans of stoveline, but had never before heard of an accident from its use.

On the 1st day of March, 1906, the plaintiff's intestate purchased of said Kamaks one of said cans of stoveline, for the purpose of polishing a stove. She was not cautioned by them against using the same on a hot stove, or near any flame of fire, and she did not know that there was danger in so using it. On the 6th day of March, 1906, Mrs. Wolcho used said stoveline in the manner directed on the can, which directions were read to her by her daughter, and with the brush furnished for such purpose, on a stove in

her kitchen. A coal fire was still burning in the stove, though it was then going out. The stove was warm, but not red hot. An ordinary lighted kerosene lamp stood on a table some five or six feet from the stove. The doors and windows of the kitchen were closed. She was holding the can of stoveline in one hand, and with the other applying the stoveline to the oven door upon the front of the stove, the stove covers being on and the doors closed, and no flame apparent from the top or sides of the stove, when said compound caught fire, the benzine in the can ignited, and burst into flame, and set fire to the clothes of the plaintiff's intestate; and as a result she was so severely burned that she died on the 6th day of April, 1906. She was in the exercise of reasonable care in so using said mixture.

In the trial court the case was heard in damages upon the defendant's default and his consequent prima facie admission of liability upon the grounds alleged in the complaint, and his assumption of the burden of disproving such liability.

The defendant contended in the court below, as he does in this court, that he sustained this burden of proof by establishing, among other things: (1) that the preparation in question was not manufactured or sold for use on stoves, but as a "stove pipe enamel"; (2) that its use even upon a hot stove was not dangerous; (3) that if it has proved to be dangerous the defendant was not negligent in selling it without notice of its inflammable character; and (4) that the plaintiff's intestate was negligent in using it upon a hot stove.

Regarding the first proposition which the defendant claims to have established, it is immaterial that the defendant did not intend that "stoveline" should be used on stoves, if, from the labels and directions upon the cans, persons of ordinary intelligence who were expected to use this article, and who read, or had read to them, the labels

and directions on the cans, were informed that it might be used on stoves. The name "stoveline" on the label; the statement that it is "for use on all iron work"; and that it would "stand a high temperature," are in our opinion clearly sufficient to justify the conclusion reached by the trial court, that one who had no knowledge or notice of the dangerous character of this mixture might reasonably have supposed that it was intended to be used upon stoves and might safely be used upon a hot stove.

Second, whether it was dangerous to use this preparation upon a hot stove, was a question of fact, upon which the evidence was conflicting, and the decision of the trial court, who heard and saw the witnesses who testified upon this question, is final. The danger of so using it, as stated in the finding, is not materially variant from that alleged in the complaint. The plaintiff was not required to state in technical terms and with scientific accuracy exactly what happened or was liable to occur, when this mixture was applied to a hot stove. The averment that when used upon hot substances (in connection with the averment that Mrs. Wolcho was injured when using it upon her kitchen stove) it became dangerous "in that it was liable to ignite and cause a fierce blaze in the nature of an explosion which is difficult to control," was sufficient to permit proof that the mixture was dangerous to be used upon a hot stove, because when so heated the fumes arising from the benzine contained in the compound, and uniting with the air, formed a dangerous mixture, which, coming in contact with a flame in or near the stove, was liable to cause an explosive flame.

Upon the third claim we find no facts inconsistent with the conclusion of the trial court, that the defendant failed to disprove his alleged negligence. The facts found, that he was a chemist; that he knew the composition of "stoveline," and was familiar with the inflammable nature and danger of the use of benzine; and that the labels which

he placed upon the cans contained no notice or warning of such danger, if they do not establish his negligence, do not prove his freedom from negligence; nor does the fact found, that during his two or three years' previous experience in the sale of this article, he had heard of no accident from the use of it.

The fourth claim, that the facts show that the plaintiff's intestate was guilty of contributory negligence, cannot be sustained. The trial court has not only held that the defendant failed to sustain his burden of proof upon this question, but has found that Mrs. Wolcho was in the exercise of reasonable care in using this polish as she did. We find no error of law in such decision. The directions upon the cans were read to Mrs. Wolcho. Her belief that the mixture was intended for use upon a stove was not an unreasonable conclusion from the language of the labels and directions; and having reasonable ground for believing that "stoveline" might properly be used as a stove polish, the use of it for that purpose upon a hot stove was not negligence as a matter of law.

The ruling excluding the testimony of the defendant, that he had never heard any complaint about this material before the accident, was not injurious to him, as it is found as a fact that he had heard no complaint.

One Dr. Stanley, a witness for the defendant, having testified that he had experimented upon other mixtures similar to stoveline, naming one called "sapolin" and another called "P. G. E.," was asked how their component parts compared with those of stoveline; and one Meyer, a witness for the defendant, having testified that he had dealt several years in stoveline and other "stovepipe enamels," was asked whether there was any difference in them, as to directions or warnings as to the use of them.

Both these inquiries were properly excluded. First, it does not appear to have been shown that the constituent parts of the other mixtures were precisely the same, and

in the same proportions as those of stoveline. Further, it did not appear that these other mixtures were advertised to be used upon stoves, or were in fact used upon stoves. One of these witnesses describes them as "stovepipe enamels." They may have been only advertised to be used, as the defendant claims "stoveline" was, for other purposes than as a stove polish. They evidently were sold under different names than "stoveline," and the names under which they were sold do not appear to indicate that they were to be, or might be used upon stoves, as it is claimed the word stoveline does. The fact that mixtures similar to stoveline, and dangerous to be used upon a hot stove, had, without notice of such danger, been generally sold for other purposes, did not tend to prove that the defendant was not negligent in selling the article in question as one which might be safely used upon a hot stove. Later in the trial the defendant was permitted to testify that he did not know of the labels upon any other stovepipe enamel except upon the one called sapolin; that that contained no warning; and that the label on stoveline was copied very nearly from it. Of other rulings complained of it is sufficient to say that they were manifestly correct.

The defendant has, under § 797 of the General Statutes, procured the evidence and rulings to be made a part of the record, and in his assignment of errors has requested numerous corrections of the finding. The basis of most of the requests for material changes seems to be that what some witness has testified to and no witness has contradicted, must be treated as an admitted or an undisputed fact, under § 10 of the Rules of the Supreme Court of Errors, Practice Book (1908), p. 268. That this is a mistaken view of the meaning of the rule is apparent from its express language: "That a witness testified to a fact without direct contradiction is not of itself sufficient: the trial court must judge of the credit of a witness." We perceive no

error of law, upon the part of the trial court in reaching the conclusions stated in its finding, and they sustain the judgment rendered. The requests for corrections are denied.

There is no error.

In this opinion the other judges concurred.