### Teresa Tombari *vs.* John P. Connors.

First Judicial District, Hartford, January Term, 1912.

Hall, C. J., Prentice, Thayer, Roraback and Wheeler, Js.

A druggist is liable for the negligence of his clerk in performing duties within the scope of his employment.

He is not relieved from this liability by the fact that the clerk is competent and experienced.

These facts are not admissible as tending to show whether or not he was careful on the occasion in question.

In determining the question of ordinary care as applied to a drug clerk filling prescriptions, the dangerous character of many drugs, and the serious consequences which may ensue from want of care, are to be considered.

Ordinary care with reference to the business of a druggist signifies a high degree of prudence, thoughtfulness, and vigilance.

The question of negligence as applied to the conduct of a drug clerk is one of fact; and the conclusion of the trial court thereupon must stand unless inconsistent with subordinate facts found.

Where a prescription as read by the clerk, taken in connection with the surrounding circumstances, naturally excites suspicion that an ingredient apparently named was not intended, it is the duty of the clerk to make reasonable effort to ascertain whether or not his reading is correct.

If a drug clerk does not exercise due care, it is no defense to an action against his employer that he was a duly licensed pharmacist.

Argued January 3d—decided March 7th, 1912.

Action to recover damages for illness caused by the alleged negligent mistake of the defendant's drug clerk in filling a physician's prescription, brought to and tried

by the Court of Common Pleas in Hartford County, *Peck, J.;* facts found and judgment rendered for the plaintiff for $160, and appeal by the defendant. *No error.*

*Bernard F. Gaffney,* for the appellant (defendant).

*William F. Mangan,* for the appellee (plaintiff).

RORABACK, J.   This action is against a druggist for the negligence of a clerk employed by him in filling a prescription.   The prescription, as intended by the doctor who wrote it, called for powders to be taken three times a day, each one containing five grains of calumba, with other ingredients.   The drug clerk who compounded the prescription substituted calomel for calumba.   The defendant denied the negligence alleged in the plaintiff's complaint, and also based his defense upon the allegation that his clerk was a duly licensed pharmacist.   The Court of Common Pleas found the issues for the plaintiff, and held that the clerk should, by the exercise of due care, have read the prescription as calling for calumba, or at least that there was such doubt as to the correct reading as should have led him to inquire of the doctor, and that there was negligence in compounding the powders which he delivered to the plaintiff.   The substance of the defendant's appeal is that the court erred in reaching the conclusions just stated.

The finding shows that in July, 1910, the defendant, who is a licensed pharmacist, owned and conducted a drug store in New Britain, and that one Benjamin Cutner, who is also a licensed pharmacist, was in his employ as a clerk.   The plaintiff is living with her husband and children in New Britain.   She is an Italian, and does not speak or understand the English language.

On July 23d, 1910, she was suffering from an attack of indigestion, and with a friend, who acted as an interpreter, went to a doctor's office in New Britain. The doctor diagnosed the plaintiff's complaint as indigestion, and gave her a prescription, with directions to have it filled at some pharmacy. Mrs. Tombari, with her friend, went to the drug store of the defendant, and gave the prescription to Cutner, the clerk, to be filled. The ingredients written in the prescription, as the doctor intended them to be read, are as follows: "Rhei, Calumba, Bismuth Sub., Sodii Bicarb, Zingiber, Fiat in Chart XXIV, One t. i. d." The interpretation, as the doctor intended it to be read, is as follows: "Rhubarb one drachm, Calumba, subnitrate of bismuth, Bicarbonate of Sodium, and ginger, each two drachms. To be made into twenty-four powders. One three times a day." The clerk read the prescription as intended, except that he interpreted the second word to mean "calomel," instead of "calumba"; and he accordingly put up the powders, each containing five grains of calomel. Calumba is a mild bitter tonic, useful in functional disturbances of the digestive organs, and is not used frequently. Calomel is chloride of mercury, and is in frequent use in small doses as a purgative and stimulant of the liver. A prescription for five grains of calomel to be taken three times a day, making a total of one hundred twenty grains, or two drachms, in eight days, would be unusual, though not unprecedented in some violent diseases. The quantity of calomel compounded by the clerk attracted his attention, and he inquired of the plaintiff through her interpreter if she understood the dose, and had any special instructions from the doctor. The record does not disclose that any response was given to this inquiry. The taking of six of these powders by the plaintiff as prepared produced a very violent diarrhœa and

vomiting by which she was rendered excessively weak, and also produced an excessive flow of saliva, which continually filled and flowed from her mouth; produced the unpleasant odor of mercury; and also produced great pain in her gums, and caused the temporary loosening of her teeth. Her lips and throat became swollen and painful. She sent for the doctor, who immediately discovered the mistake that had been made, and gave her remedies to relieve her of the effects of calomel.

It is elementary that the master who undertakes to perform a service is liable for the negligence of his servant, who, within the scope of his employment, is performing the services undertaken. *McKiernan* v. *Lehmaier*, 85 Conn. 111, 81 Atl. 969.

The fact that Cutner, the defendant's clerk who compounded the prescription in question, "was a competent druggist of experience," does not relieve the defendant from a claim for damages for injuries sustained on account of negligence of his clerk. "The most skillful and competent may be, and human experience teaches us will be, sometimes negligent. Hence the fact that one is skillful and competent may prove that he will generally be more careful than the unskillful and incompetent; but it has no tendency to prove due care on a particular occasion." *American Straw Board Co.* v. *Smith*, 94 Md. 19, 21, 50 Atl. 414; *Smith* v. *Middleton*, 112 Ky. 588, 66 S. W. 388; *Burgess* v. *Sims Drug Co.*, 114 Iowa, 275, 86 N. W. 307.

The legal measure of the duty of druggists toward their patrons, as in all other relations of life, is properly expressed by the phrase "ordinary care," yet it must not be forgotten that it is "ordinary care" with reference to that special and peculiar business. In determining what degree of prudence, vigilance, and thoughtfulness will fill the requirements of "ordinary

Tombari *v.* Connors.

care" in compounding medicines and filling prescriptions, it is necessary to consider the poisonous character of so many of the drugs with which the apothecary deals, and the grave and fatal consequence which may follow the want of due care. In such a case "ordinary care" calls for a degree of vigilance and prudence commensurate with the dangers involved. The general customer ordinarily has no definite knowledge concerning the numerous medicines and poisons specified in the United States Dispensatory and Pharmacopœia, but must rely implicitly upon the druggist who holds himself out as one having the peculiar learning and skill, and conceptions of legal duty, necessary to a safe and proper discharge of that duty.

"Ordinary care" with reference to the business of a druggist must therefore be held to signify the highest practicable degree of prudence, thoughtfulness, and vigilance, and the most exact and reliable safeguards consistent with the reasonable conduct of the business, in order that human life may not constantly be exposed to the danger flowing from the substitution of deadly poisons for harmless medicine. *Tremblay* v. *Kimball,* 107 Me. 53, 77 Atl. 405. See cases cited, note 29 L. R. A. (N. S.) pages 900, 901, 902, and 903.

The trial court has found that the defendant's clerk was negligent in compounding the powders in question as he did, and then delivering them to the plaintiff. This conclusion is a question of fact, and must stand, unless it is inconsistent with the other subordinate facts which have been set forth in the finding. *Walcho* v. *Rosenbluth,* 81 Conn. 358, 71 Atl. 566; *Metcalf* v. *Central Vermont Ry. Co.,* 78 Conn. 614, 619, 63 Atl. 633. It is found that calumba was intended, and that calomel was given. Calomel was furnished by mistake. A prescription calling for one hundred and twenty grains of calomel to be taken in twenty-four powders, one

three times a day, is extraordinary, and, if taken as directed, is liable to be attended with serious results.

Cutner was an experienced pharmacist, and, when he delivered the medicine as he had compounded it, he could have anticipated that an injury like that which actually occurred would naturally follow. He could have seen from the nationality and appearance of the plaintiff that she knew nothing of the property and uses of calomel. The prescription itself as he read it, in connection with the surrounding circumstances, excited his suspicion that calomel was not intended. The record does not disclose that he then made a reasonable effort to ascertain whether he might not be mistaken.

The defendant contends that the prescription was written in Latin, illegible, and doubtful as to what drug was really intended. Assuming this to be true, it did not lessen the duty of the clerk to be alert to avoid a mistake. If there was any reasonable doubt as to the identical thing ordered, the defendant's clerk should have taken all reasonable precaution to be certain that he did not sell one thing when another had been called for. The trial court has found that such precaution was not taken. There is nothing in any of the subordinate facts appearing in the record inconsistent with this conclusion.

There is no error.

In this opinion the other judges concurred.