367 So.2d 431 (1978)
FRENCH DRUG COMPANY, INC.
v.
Rollie JONES.
No. 50672.
Supreme Court of Mississippi.
November 8, 1978.
*432 Bryant & Stennis, Thomas L. Stennis, II, Gulfport, for appellant.
Boyce Holleman, Otto Albert Wusnack, Ben F. Galloway, III, Jim W. Rose, Gulfport, for appellee.
Before PATTERSON, SUGG and BOWLING, JJ.
BOWLING, Justice, for the Court:
This appeal is from the Circuit Court of Harrison County, Mississippi. Appellee, Rollie Jones (plaintiff below), secured a jury verdict and judgment thereon in the sum of $135,000 against appellant.
The declaration of appellee charged that on June 11, 1974, his physician prescribed a drug known as "Ethatab." It is then charged that the pharmacist who prepared the drug called for in the prescription negligently substituted "Estratab" rather than the drug called for in the prescription. It was alleged that appellee took the drug erroneously sold him until May, 1975, and that as a result thereof he suffered damages as hereinafter will be discussed in this opinion.
The principal facts to be considered in this opinion are not seriously disputed. Appellee's evidence was that he had sustained frost bitten legs and feet during the "Battle of the Bulge" in World War II, and since that time he had had circulation problems with his legs. In 1970, he had undergone an operation that severed certain nerves that affect the blood vessels of the legs but that these procedures did not relieve the pain he was having. In June, 1974, upon another's recommendation, he was examined by Dr. William G. Jennings, a neurologist in Memphis, Tennessee. After being confined to a hospital for several days, during which time various tests and examinations were conducted, appellee was discharged to return home. At that time he was given prescriptions for two drugs by Dr. Jennings. Both of these drugs were to aid circulation in appellee's legs. Upon returning home the prescriptions were taken to the drug store owned and operated by appellant. As charged in the declaration, the pharmacist substituted "Estratab" for *433 the prescribed drug "Ethatab." It is undisputed that "Estratab" is a female hormone. Shortly after beginning to take the prescribed doses of the drug, appellee began to notice certain troubles and changes. His breasts started to become enlarged; he suffered continuous nausea; physical and mental fatigue; and loss of memory. According to his testimony and that of the treating physicians and psychiatrists, he immediately became impotent, which caused certain psychological disorders. As hereinbefore stated, he continued taking the medication until the error was discovered in May, 1975. After discontinuing the erroneously filled prescription, it appears that appellee's physical problems such as tender and enlarged breasts, nausea, loss of hair, and certain other physical disabilities ceased.
During the period of time the female hormone drug was taken, appellee continued to suffer with his legs. According to appellee and his physicians and psychiatrists, he continued having the impotency problem. At the time of the trial in September, 1976, he was under the care and treatment of at least one psychiatrist, and, according to him, treatment for another year or two would be necessary. The evidence of appellee was that the entire situation had caused a deterioration in his family life and relationship with his wife.
Appellant alleges the following assignments of error:
1. The Court erred in granting Appellee a peremptory instruction.
2. The Court erred in granting Appellee's instruction P14A, P15 and C17A by the court.[*]
3. The Court erred in refusing Appellant's instruction 21A on inference of unfavorable testimony from uncalled Drs. Culler and Hamilton.
4. The Court erred in granting certain other Court instructions and in refusing certain Appellant instructions.
5. The Court erred in requiring Dr. Jay Seastrunk to leave counsel table after Seastrunk had advised appellant at counsel table throughout most of trial as expert and the court erred in refusing to permit Dr. Jay Seastrunk to testify.
6. Mississippi's medical privilege statute, section 13-1-21, Mississippi Code of 1972, is unconstitutional on its face and if not on its face because of the way it was applied to the instant facts because it violated appellant's constitutional guarantees of fair trial, right of cross-examination, Fifth Amendment and Fourteenth Amendment to the Constitution of the United States because of violation of due process of law, deprivation of property and equal protection as well as Sections 14 and 24 of the Mississippi Constitution because as applied it promulgates injustice, suppresses the truth, encourages the denial of equal protection, due process and justice.
7. The Court erred in allowing testimony of Dr. Wade and Dr. Ball because (1) Wade and Ball received their history from nurses, other doctors, plaintiff's attorney and appellee in violation of the hearsay rule; (2) they were employed by appellee's attorneys during pendency of suit thus history received even from appellee violated hearsay rule; and (3) no proper predicate was laid for their testimony through proper hypothetical.
8. The verdict is against the overwhelming weight of testimony, is wrong as a matter of law, and so excessive as to evince bias, passion and prejudice on behalf of the jury in favor of appellee and against appellant.
Upon conclusion of the evidence the lower court peremptorily charged the jury to return a verdict for appellee. We find that this was proper. As hereinbefore stated, it is undisputed that Dr. Jennings prepared a proper prescription and that it was filled erroneously by appellant. The evidence does not show a substantial disagreement with the charge that the error was made. All courts have held that a druggist is required to use a high standard of care in dispensing drugs on prescriptions of physicians, *434 and that when he negligently supplies a drug other than the drug requested, he is liable for resulting harm to the purchaser. Edelstein v. Cooke, 108 Ohio St. 346, 140 N.E. 765 (1923); Knoefel v. Atkins, 40 Ind. App. 428, 81 N.E. 600 (1907); Tombari v. Connors, 85 Conn. 231, 82 A. 640 (1912); Troppi v. Scarf, 31 Mich. App. 240, 187 N.W.2d 511 (1971); Hoar v. Rasmusen, 229 Wis. 509, 282 N.W. 652 (1938); Fuhs v. Barber, 140 Kan. 373, 36 P.2d 962 (1934).
We agree with the authorities holding that a druggist or pharmacist is held to a high standard or degree of care in filling drug prescriptions. It is inescapable that appellant did not use the required degree of care by substituting the female hormone drug for the blood circulation drug called for in appellee's prescription. The lower court correctly granted the peremptory instruction.
Appellant alleges error in the granting by the court of appellee's instructions P14A, P15 and C17A. We carefully have studied all of the instructions. As heretofore seen, the issue of liability was settled by the peremptory instruction. The record reveals that the lower court gave full and complete instructions on all other phases of the case. Instruction P15 is a general damage instruction. It correctly admonishes the jury as to what elements of damage it should consider and we can find no error whatever in its language and plain instruction to the jury. It fully and completely follows the evidence regarding the elements of damage sustained by appellee and requires the jury to find those elements to be proven by a preponderance of the evidence.
Instructions P14A and C17A refer solely to guidelines regarding a jury finding of contributory negligence by plaintiff. Number C17A, given by the court, instructed the jury that if the plaintiff did not use reasonable care after securing the erroneous drug by seeking medical advice or attention or any act that a reasonable man should have done in the circumstances, then the jury could find the plaintiff guilty of contributory negligence and reduce the damages accordingly.
Instruction P14A was converse to C17A by instructing the jury that if plaintiff had no special knowledge of drugs or medicine and he was solely obeying directions for taking the prescription, and that in all actions after securing the wrong drug, plaintiff acted as a reasonable and prudent person similarly situated, then he was not guilty of negligence.
In the first place, it is extremely doubtful under the circumstances shown in the record that the evidence would authorize a finding by the jury that plaintiff was guilty of any contributory negligence in taking the erroneous drug. Regardless of this, the instructions are plain and unambiguous, and taken together, the jury in no way could have been confused or misled. They clearly set out the principles of contributory negligence that possibly might apply to the facts of the case.
Appellant alleges error by the court in refusing defendant's offered instruction No. 21A. This was the standard instruction informing the jury that by the appellee not offering testimony of Dr. O.Z. Culler and Dr. Ed Hamilton "in connection with the complaints and injuries alleged to have been suffered because of the wrongful taking of the drug `Estratab' giving rise to this lawsuit," then the jury may infer that the testimony of these doctors would have been unfavorable to plaintiff. There were three doctors who examined and treated the appellee in 1970. Dr. Culler examined him, but was not qualified to treat the blood circulation condition so he referred him to Dr. Kirgis of Oschner Clinic in New Orleans. He did not perform any surgery. Upon appellee's return to Gulfport, he conferred with Dr. Hamilton who performed the minor surgery of cutting nerves that affected the flow of blood in appellee's legs. It is undisputed that this was not successful. Dr. Hamilton saw appellee only one time other than the time of the surgery. The erroneous drug was given in June, 1974. After that time appellee was examined and treated by his family physician, Dr. C.L. Klippenger and Dr. Catherine *435 Pyron, both of Gulfport. The lower court granted appellant an instruction that because appellee did not offer either of these physicians, the jury might infer that their testimony would have been unfavorable to appellee.
There was no serious contention by any witness offered in the case that any damage suffered by appellee as a result of being given the female hormone was present in 1970. In fact, the evidence was otherwise. Of course, the appellant attempted to elicit on cross-examination of appellee's physicians and the expert physician presented by appellant that there might have been a possibility of appellee having some trouble with potency in the past. At most, the evidence showed merely a surmise.
The briefs of both parties discussed the prior cases of this Court on the instruction in question. As stated above, the instruction was given pertaining to the two physicians who saw appellee for damages sustained because of the incident regarding the drug. The jury was fully impressed and we feel reasonably certain that it was called to their attention that these doctors were not offered by appellee and the court was instructing the jury that it could infer their adverse testimony. The jury had this strong inference before it regarding the allegations of the declaration and the evidence in the case. In no case has this Court held that a litigant has the right to an indefinite selection of non-testifying experts to invoke the inference that their testimony would be unfavorable.
In addition to other cases, the appellant cites Killings v. Metropolitan Life Insurance Company, 187 Miss. 265, 192 So. 577 (1939). In that case, the Court, through Justice Anderson, clearly set out the rights of those requesting an adverse inference instruction such as that requested here. In Killings, however, the Court held that it should be shown that the absent witness was material. In our opinion, the lower court was clearly within its discretion in holding that the two doctors who saw appellee in 1970 were too remote from the matters being tried. It is essential for the lower court to have some degree of discretion in these matters and we cannot say error was committed unless it clearly was error. We do not think the lower court abused its discretion here. As stated above, the instruction was given regarding the absent treating physicians in the matter before the court.
Appellant complains of the court's instruction CO2 regarding the burden of proof placed on the plaintiff. A reading of that instruction clearly shows that the court placed as heavy a burden as could be placed. It required the plaintiff to prove and establish any essential element of his claim by a preponderance of the evidence. This clearly was not error.
As hereinbefore stated, we have examined all of the instructions and we can find no error in any that were given or refused.
Appellant employed Dr. Jay Seastrunk, a psychiatrist from New Orleans. On order of the lower court and after contest by appellee, he was permitted to attend and take part in the pretrial deposition of appellee that lasted for many hours. He attempted to sit with appellant's attorneys at the counsel table and assist them in presenting the case. Appellee's attorneys objected to this being done in the event Dr. Seastrunk was going to be offered as a witness later by the defendant. The court sustained this objection but appellant's attorneys chose to keep the doctor by their side for advice and counsel during the trial.
Appellant cites cases both civil and criminal where an expert was allowed to testify after being in the courtroom and hearing evidence. In the several cases, cited, the opinion was based on a discretion on the part of the trial court in allowing a witness to testify after the "rule" was invoked. In the criminal cases, it is permitted that a psychiatrist may sit in the courtroom and listen to testimony and then testify. In no case has a contention been granted as requested here. Dr. Seastrunk not only in effect was an "attorney" during the taking of appellee's deposition, but he continued to act in that capacity at the trial. Certainly *436 the lower court did not abuse its discretion in then prohibiting him from testifying as an expert. Appellants were permitted to use an expert, Dr. Hansel Janet, in the normal and usual manner without having participated in the trial procedures.
Appellant contends, as has been contended before, that the medical privilege statute, Mississippi Code Annotated section 13-1-21 (1972), is unconstitutional. The constitutionality of this statute has been settled by the Court in several cases, including but not limited to Killings, supra; Yazoo & M.V. Ry. Co. v. Decker, 150 Miss. 621, 116 So. 287 (1928), and U.S.F. & G. Co. v. Hood, 124 Miss. 548, 87 So. 115 (1920).
Appellant complains of the admission of testimony from Dr. David Wade and Dr. Leonard Ball. Dr. Wade testified as an expert in endocrinology and metabolism. There could be no doubt of his qualifications. He explained the uses and results of the drugs in question and explained the results of a man taking the drug "Estratab." We carefully have examined the record and studied his testimony, including the hypothetical questions propounded him. We do not find any error in those questions or in any part of his admitted testimony. Also we have carefully read all of the testimony of Dr. Ball. He examined and treated appellee and as a result thereof gave clear opinions as to his diagnosis and proposed treatment. Due to his specialty, Dr. Ball had referred appellee to Dr. Clifton Davis, a prominent psychiatrist in that area. Dr. Davis was later called as a witness, and his testimony, obviously believed by the jury, fully corroborated all of the testimony of Drs. Wade and Ball. Dr. Davis had been treating appellee prior to the trial and stated that this treatment would continue for approximately two years thereafter.
Appellant contends that the verdict of the jury is against the overwhelming weight of the evidence and is so excessive as to evince bias, passion and prejudice. We realize that the verdict appears to be large. This is an unusual case of damages. The jury found that the error of appellant resulted in severe damage to appellee. He continued to have pain in his legs for approximately a year prior to the discovery of the error. During this time his breasts were hurting and were enlarging continuously; he suffered pain, nausea, and loss of memory; he was subjected continuously to much physical and mental fatigue. The evidence of the attending physicians and psychiatrists was that appellee had undergone almost a complete personality change. Moreover, he had been rendered impotent because of the continual taking of the drug and had experienced psychological disorders after the error was ascertained that resulted in undisputed damage. Also, he had been under the continuous treatment of physicians and according to the evidence, as obviously believed by the jury, this treatment would continue for at least another two years. From a study of the entire record of eight volumes of evidence, we cannot say that the verdict of the jury was so excessive as to constitute bias, passion and prejudice.
This Court has discussed its duty in this regard in numerous cases  none of which need to be cited in this opinion. Even though had we been members of the jury we might not have rendered a verdict in the amount rendered here, this Court, however, cannot substitute its opinion for that of the jury unless the evidence meets the yardsticks and criteria heretofore set out by this Court. We find no reversible error and the cause is therefore affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, BROOM, LEE and COFER, JJ., concur.
WALKER, J., took no part.

Appendix to follow.

*437 APPENDIX
 IN THE CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI FIRST
 JUDICIAL DISTRICT
 ROLLIE JONES PLAINTIFF
 VERSUS NO. 15,504
 FRENCH DRUG COMPANY, INC. DEFENDANT

INSTRUCTION NO. P-14a
The Court instructs the Jury that a general customer of a pharmacy who has no special or definite knowledge concerning drugs or medicines is allowed by the law to rely upon the pharmacist who holds himself out as one having a peculiar learning and skill to fill prescriptions properly, and such a customer cannot be guilty of negligence if, having no such special knowledge of drugs or medicine, he obeys the directions regarding the taking of the drug or medicine, which accompanies the drug container received from the drug store. Thus, if you find from a preponderance of the evidence in this case that Plaintiff Rollie Jones has no special knowledge of drugs or medicines or of estratabs, and you further find that he obeyed the directions located on the label of the estratab container and took the estratabs in accordance therewith and he acted as a reasonable and prudent man similarly situated and similarly educated would have acted, then you cannot find the Plaintiff guilty of any negligence, and if your verdict be fore the Plaintiff you cannot diminish his damages, if any.

"GIVEN"

J.R.G.

INSTRUCTION NO. P-15
The Court instructs the Jury that damages to be assessed by a jury for a personal injury cannot be assessed by any fixed rule, but that you are the sole judges as to the measure of damages in any case; it is your duty, therefore, to award Rollie Jones such damages as will fairly and reasonably compensate him for enlargement and tenderness of the breasts, pains in the back, nausea, abnormal loss of hair, physical and mental fatigue, loss of memory, impotency, embarrassment, any and all psychological disorders, including personality change, depression, and medical bills, past and future, if any, that the Plaintiff, Rollie Jones, has shown by a preponderance of the evidence to have sustained as a proximate result of taking estratab placed in the prescription calling for ethatab; in determining the amount of such damages to which the Plaintiff, Rollie Jones, may be entitled, it is your duty to take into consideration his physical and mental condition prior to his taking of estratab, and after such time, whether or not his mental and physical injuries are temporary or permanent, and any medical expenses which he has shown by a preponderance of the evidence to have sustained as a result of his injuries, or will sustain in the future as a result thereof, if any, and proximately caused by the ingestion of the estratab, and in awarding damages to Plaintiff, Rollie Jones, you should award him such amount as will reasonably and fairly compensate him for enlargement and tenderness of the breasts, pains in the back and neck, nausea, abnormal loss of hair, dimunition of testicles and mental fatigue, loss of memory, impotency, and any and all psychological disorders, including personality change, depression, mental and emotional anguish, and medical bills, past and future, if any, which he has shown by a preponderance of the evidence to have sustained as a proximate result of the wrongful filling of the prescription by Defendant, French Drug Company, Inc., and the ingestion of estratab by the Plaintiff from said prescription.

"GIVEN"

J.R.G.

INSTRUCTION C-17-a
The Court instructs the jury that under the law of the State of Mississippi every *438 person is under a duty to do that which a reasonable prudent man would do under the same or similar circumstances; if you believe from the evidence in this case that the Plaintiff, after taking the Estratab for a period of time experienced unusual and bizarre problems, including enlargement of the breasts, tenderness of the breasts, impotency, weakness, loss of hair, or other unusual symptoms, and if you further believe that the Plaintiff did not use reasonable care to seek medical advice or attention regarding the aforesaid conditions, if any, and if you further believe that a reasonable prudent man would have sought medical advice or assistance upon experiencing the aforesaid problems or conditions, if any, then the Plaintiff was guilty of negligence which contributed to the injuries and damages, if any, which he may have suffered; if you find the Plaintiff guilty of contributory negligence as defined in these instructions, then it is your sworn duty to reduce the damages you award him by that percentage which you may find his own negligence, if any, contributed to said damages, if any.

"GIVEN"

J.R.G.
NOTES
[*] See Appendix.